THE STATE OF KANSAS, *ex rel. John S. Dawson, as Attorney for the Board of Railroad Commissioners,* Plaintiff, v. THE PARSONS STREET RAILWAY AND ELECTRICAL COMPANY, *Defendant.* J. P. APPICH *et al., Intervenors.*

No. 16,719.

SYLLABUS BY THE COURT.

1. REMEDY—*Owner of Property Injured by Authorized Subway for a Car Line in Public Street.* If the public officers who are charged with the control of such matters authorize a subway for a car line in a public street, an owner of abutting property, the value of which is thereby diminished, can not interfere to prevent its construction, however seriously he may be inconvenienced by it. In such case his only remedy, if any, is by an action for the consequential damages.

2. PUBLIC STREETS—*Legislative Power Delegated to Railroad Commissioners—Street Railway—Subway Beneath Tracks of a Railroad.* The legislature, having paramount authority over public streets, may authorize a street-car company which has by ordinance been granted a right to operate only a surface road to construct a subway beneath the tracks of a railroad. And it may devolve the power to permit and to require this upon the board of railroad commissioners.

3. BOARD OF RAILROAD COMMISSIONERS—*Crossing of Railroad Track by Street-car Line.* Under the statute (Laws 1907, ch. 267, § 1; Gen. Stat. 1901, § 5974) giving the board of railroad commissioners power to determine whether there is a necessity for the crossing of a railroad track by a street-car line, "and, if so, the place thereof, whether it shall be over or under the existing railroad, or at grade, and in other

respects the manner of such crossing" (Gen. Stat. 1901, § 5974), the board can authorize the street-railway company to construct a subway in the street of a city beneath the tracks of a railroad company, in accordance with whatever regulations it may see fit to impose, so that they have relation to the safe operation of both roads and are not unreasonable.

4. ———— *Discretion—Conclusiveness of Board's Determination.* Unless the board acts arbitrarily or capriciously in such matters its determinations are conclusive.

5. PARTIES—*Mandamus.* In a mandamus brought by the state to require a street-railway company to construct a subway beneath the tracks of a railroad the city is not a necessary party.

6. STREET RAILWAYS—*Undergrade Crossing—Railroad Tracks— Mandamus—Railroad Commissioners.* Where a street-railway company is operating a continuous line across a city, except for a break caused by a number of railroad tracks, over which its passengers are transferred, the board of railroad commissioners may require it to construct a crossing below grade.

Original proceeding in mandamus. Opinion filed December 11, 1909. Writ allowed.

*John S. Dawson,* for the plaintiff.

*Albert Emanuel,* and *W. D. Atkinson,* for the defendant.

*C. E. Pile,* for the intervenors.

The opinion of the court was delivered by

MASON, J.: The Parsons Street Railway and Electrical Company operates a street railway in the city of Parsons. It desired to cross the tracks of the Missouri, Kansas & Texas Railway Company in a street of that city. It applied to the state board of railroad commissioners, which body, on October 9, 1909, upon due hearing, ordered it to construct for that purpose a subway under the tracks of the railroad, in accordance with certain plans covering all the details of the work, including the approaches. On October 15 a

proceeding by mandamus was brought in this court in the name of the state on the relation of the attorney for the board of railroad commissioners to require the street-railway company to comply with the order. The defendant answered expressing its willingness to do so if it has the necessary authority, but stating that the city ordinance under which it operates provides that its tracks shall be laid at the grade of the streets. Several owners of property abutting on the site of the approaches shown in the plan have intervened and urge various reasons why a peremptory writ should not be allowed. The cause is submitted upon the pleadings.

The power of the state over the public streets, whether exercised directly by the legislature, or through the city council or some other body, is absolute. (*La Harpe v. Gas Co.*, 69 Kan. 97; *Prince v. Crocker*, 166 Mass. 347; 28 Cyc. 287; 15 Cyc. 626.) If the public officers who are charged by the statute with control of the matter have authorized the subway in question, the owners of the abutting property have no standing to object to its construction on their own account, however much inconvenience and injury they may suffer from it. None of their property is actually taken, and the only remedy, if any, which the law affords them for merely consequential damages is by an action for compensation. (*O. O. C. & C. G. Rld. Co. v. Larson*, 40 Kan. 301; *City of Leavenworth v. Douglass*, 59 Kan. 416; 15 Cyc. 781.) The rights of abutters under somewhat similar conditions are discussed in sections 138, 174, 178 and 191 of the third edition of volume 1 of Lewis on Eminent Domain. Notwithstanding no relief can be given them in this proceeding, it is appropriate that the individuals whose interests are injuriously affected should be heard as friends of the court, especially as no objection to the work is urged from any other quarter. The city has not been made a party, and a majority of the council

approve the proposed plans and prefer that it shall not intervene.

Although the franchise granted by the city to the street-car company only authorizes it to lay its tracks at grade, the legislature, as the paramount authority, can enlarge its power in this regard, and this may be done directly or through some other body. (27 A. & E. Encycl. of L. 168, 178; 28 Cyc. 848; *Wulf v. Kansas City*, 77 Kan. 358, 373-375.)

The force of the order of the board of railroad commissioners depends wholly upon the statute. In 1907 the jurisdiction of the board was extended to electric lines, which previously had not been under its control. (*Railroad Co. v. Railroad Commissioners*, 73 Kan. 168.) The amended statute concludes with this provision:

"This act shall not be construed to apply to electric street, or street-railway lines operating exclusively within any county, except as to the crossings of any railroad over any other railroad, as provided in section 5974, General Statutes of 1901." (Laws 1907, ch. 267, § 1.)

The section of the general statutes referred to, so far as here important, reads as follows:

"Any railroad company authorized to operate a railroad in this state desiring to cross or unite its track with any other railroad upon the grounds of such other railway corporation shall make application in writing to the board of railroad commissioners, stating the place of crossing or intersection; whereupon the board of railroad commissioners shall fix a day for the hearing of such application, and notify the railway corporations interested, at which time, unless further time be granted by the board, the corporations interested shall be heard in regard to the necessity, place, manner and time of such crossing or connection; and upon such hearing either party, or the board, may call and examine witnesses in regard to the matter; and the board shall, after such hearing and a personal examination of the locality where a crossing or connection is de-

sired, determine whether there is a necessity for such crossing or not, and, if so, the place thereof, whether it shall be over or under the existing railroad, or at grade, and in other respects the manner of such crossing and the terms upon which the same shall be made and maintained." (Gen. Stat. 1901, § 5974.)

By the terms of the statute the board of railroad commissioners had power to determine that the crossing should be made at the place indicated, by means of a subway beneath the railroad tracks. But in addition to this it also had power to determine the "manner" of crossing, and we think this fairly implies the right to make any reasonable requirement having relation to the safe operation of both roads, that being a matter committed to its control. (33 Cyc. 296.) For instance, the kind of support to be provided for the surface railroad and the grade and consequent length of the approaches to the subway are details clearly subject to regulation by the board. Consequently a proper function of the board is to decide upon a plan of the work, as has been done in this case, and its decision, in the absence of exceptional circumstances, must be final. Of course, if its action had been arbitrary or capricious, the courts could afford relief. And doubtless the city could insist upon compliance with any conditions it might see fit to impose consistent with the requirements of the board, for the purpose of minimizing any resulting damage and inconvenience.

The intervenors complain of public and private inconvenience that will result from the carrying out of the present plans. The situation presents, however, merely a problem in engineering. The wisdom of a particular method of construction is for the determination of the railroad board. There is nothing in the record to suggest remotely any abuse of discretion. The court can not presume to pass judgment upon the fitness of the plans adopted.

The intervenors also contend that the city should

have been made a party to this proceeding and that in its absence there is a defect of parties. Technically, in mandamus the only necessary parties are the plaintiff, who asserts the right to have an act done, and the defendant, upon whom the public duty rests to perform it. The practice is common and commendable to bring in other persons who are likely to be injuriously affected by the judgment, in order that they may have an opportunity to be heard in their own behalf, and in a proper case the court will suspend proceedings until this is done. (*Livingston v. McCarthy,* 41 Kan. 20.) But such procedure is for the protection of the persons so affected. Here no one authorized to speak for the city asks for a hearing in its behalf, a majority of the officers who by acting together could represent it disclaim any desire for it to be heard, and it is not apparent that any injury will result to it by the decision. Under these circumstances there is neither a technical nor a practical defect of parties.

The further objection is made that the plan involves the exclusive use by the railway company, not only of the subway itself, but of that portion of the street taken up by the approaches. The most suitable arrangement to be made in this regard is a fair matter for the determination of the railroad board. The statute (Laws 1903, ch. 122, § 58) giving the mayor and councilmen of cities of the first class authority to regulate public grounds contains a prohibition of any exclusive privilege for a railway in a street, but the restriction applies only to acts of the city officials, as it is a limitation of the power granted to them.

The final objection that is thought to require specific mention is that the writ ought not to issue because, granting that the street-railway company must construct the kind of crossing prescribed by the board or none at all, it is under no public duty to construct any, and therefore is not subject to mandamus in that regard. The allegations of the alternative writ show

that the company is now operating a continuous line from one side of the city to the other, save for the break caused by the railroad tracks. This arrangement may be regarded as in effect an operation of the street railway across the railroad by means of a transfer, and it is competent for the railroad commissioners to order this method to be changed.

A peremptory writ will be awarded.