## TARVER *v.* MAYOR & COUNCIL OF DALTON *et al.*

1. A municipality can not exempt from taxation property which does not belong to any of the classes which the constitution of this State permits to be exempted.

(a) A contract between the owner of property in a city and the municipal authorities of the latter, wherein it is provided that no taxes on such property above a specified amount (which is less than the amount of taxes due) shall be collected by the city, in consideration of specified privileges and benefits conferred upon it by the owner of the property, is unlawful and not enforceable.

2. Where a taxpayer applies for mandamus to compel the municipal authorities to collect, for the years hereinafter referred to, taxes on property located in the city and subject to taxation for the year in which such application is filed and for seven years prior thereto, and the answers of the authorities aver that by reason of the contract referred to in the preceding headnote the municipal authorities of previous years collected no taxes during such years except the amount specified in the contract, which was less than the amount of taxes due on such property, and the present municipal authorities, on account of such contract, are willing that no taxes other than those specified should be collected during the present year and that no other taxes should be collected for previous years, no sufficient facts are averred to show any legal settlement of such taxes, or to show any valid reason why they should not be collected for any of such years.

(a) If the owner of such property has against the city a debt equal in amount to the taxes due by the owner to the city, this fact will not prevent the city from collecting such taxes.

3. A taxpayer applied for mandamus to compel the municipal authorities to collect taxes on property of a private corporation in the city subject to taxation, and the municipal authorities claimed in their answer that the property was not liable for such taxes, by reason of a contract between the city and such private corporation, which had no objection to being made a party defendant to such proceedings. *Held*, that it was not error, upon motion of the municipal authorities, to make the owner of the property a party to such proceedings.

4. A motion by the relator to make the mandamus absolute involves the

determination of the question as to whether or not the averments in the answers afford a sufficient reason why the mandamus should not be made absolute.

(a) In this case it was error to refuse to make the mandamus absolute, the answers setting up no sufficient reason why this should not be done.

APRIL 27, 1910.

Petition for mandamus. Before Judge Fite. Whitfield superior court. October 20, 1909.

Malcolm Tarver, as a citizen and taxpayer of the city of Dalton, sought by mandamus proceedings in the superior court of Whitfield county to force a collection from the Crown Cotton Mills (hereinafter called the mills) of certain taxes alleged to be due the city. The relator alleged that the mills owned a large amount of real estate of the probable value of $500,000, and personal property of great value, within the limits of the city, on which it had been illegally exempted from the payment of ad valorem taxes—since 1898 on the property then owned, and since 1902 on property acquired that year,—but in lieu of all special and ad valorem taxes it had paid to the city per annum $850 as a fixed commutation tax, in violation of the constitutional requirement embodied in section 5883 of the Civil Code, that all taxes shall be uniform upon the same class of subjects and ad valorem on all property subject to be taxed within the territorial limits of the authority levying the tax; that the board of tax assessors of the city had failed and refused to make any assessment of its real property, as required by law, and it had not been subjected to its proportionate part of taxes due from property of the same class; that the city clerk had failed to value the personalty as not returned, as is his duty under the law, and to issue tax executions for the amount of unpaid taxes for the respective years; and that the city council refused to enforce the collection of the taxes due—all of which neglect was for the purpose of exempting the property from taxation other than the $850 commutation tax. Relator prayed that a writ of mandamus issue, directed to the officials above mentioned, requiring them to proceed with the collection of the ad valorem tax on the property of the mills for seven years past, which it had owned for that length of time, and on property acquired by it in 1902 since the date of its ownership.

The Mayor and Council of Dalton sought by petition to have the Crown Cotton Mills made a party defendant, which was done, over

the objection of the relator. All of the defendants filed answers. The tax assessors set out that they had not assessed the realty of the mills for 1908 and 1909, because they had been informed by the clerk that an agreement which the city had with the mills in respect to taxes rendered their doing so unnecessary. The mayor and council answered that the taxes had not been regularly assessed and collected, because of an agreement between the city and the mills, relative to taxes, a copy of which was attached to the petition. (The contract between the city and the mills to which reference is made herein consisted of two agreements, the last entered into May 25, 1898, for a period of 25 years, but, for convenience, we speak of the entire agreement as the contract.). In the contract in question, the mills granted to the city certain water privileges, in connection with a spring and a creek located on its property, stipulating, "In consideration of the privileges and rights by the mills herein granted to the city, the city agrees that the mills shall in no event pay to the city for taxes, general, specific, or privilege, annually, a sum greater than eight hundred and fifty dollars ($850.00) ; and if at the rate of taxation imposed by the city the taxes upon the mills' entire property, as it is now improved or may hereafter be improved by the erection of additional buildings and the placing of additional machinery or otherwise, the taxes upon said property, including privilege tax, shall exceed the sum of eight hundred and fifty dollars ($850.00), that such excess shall be remitted to the mills as compensation and payment for the privileges granted to the city in this contract, so that the sum to be paid by the mills to the city for taxes of every kind shall in no event during the continuance of this contract exceed the sum of eight hundred and fifty dollars ($850.00) per annum." As additional consideration, the city guaranteed to the mills a sufficient supply of water for the use of its tenants, engines, boilers, etc. The answer of the mayor and council further averred, that they did not have any property right in the spring or creek in question; that they were entirely dependent upon the arrangement with the mills for a water supply for the city, and at present were unable to secure a water supply elsewhere, and that it would take a long time to establish waterworks at other points; that they did not wish to terminate the present arrangement with the mills instanter, as this would entail suffering among the people for lack of adequate water supply and sub-

ject the city to the danger of a conflagration. They admitted that the taxes of the mills, if regularly assessed, would exceed $850 per annum. They stated that they were not attempting illegally to exempt the mills from taxation, but believed the contract to be binding; and asked, should the court hold it void, that it so frame its decree as to give the city an opportunity to make provision for a water supply. In an amendment the mayor and council further alleged: "That neither the present mayor and council nor any of their predecessors have ever repudiated the contracts between the city and the Crown Cotton Mills as set out in the original answer of file. That the present mayor and council not only have not repudiated the said contract but do not intend to do so for this year, 1909, defendant being satisfied with the terms of said contract for the present until they can make a more satisfactory contract, and defendant considering that the amount of the taxes which they propose to repay or remit to the mill are a reasonable price to be paid for the benefits the city obtains from said mills under said contract. The present mayor and council, acting on this line, have passed a resolution ratifying the contract for the present year, and, as far as their power lies, ratifying the same for past years, which resolution is as follows: 'Be it resolved by the Mayor and Council of the City of Dalton, that the Board of Tax Assessors be and they are hereby instructed to proceed at once to make an assessment of all the property subject to assessment by said board within the corporate limits of the City of Dalton of the Crown Cotton Mills, and make report of their actings and doings to the clerk of this council, who shall place the said assessment upon the books for the registration of said property. Be it resolved further, that upon the rendering by said Crown Cotton Mills of an account for the use of water from the Hamilton Spring, rights of way for pipelines, use of real estate for power-houses, pools, etc., and for services rendered the city during the current year by pumping for the city in emergencies, and for any and all other services rendered, or privileges furnished: then this council shall enter into an accounting with said Crown Cotton Mills for said services and shall pay to the said Crown Cotton Mills for said services and privileges an amount not to exceed the sum due said Crown Cotton Mills as provided in the contract now existing in relation to the use of said privileges and services rendered for the present

year. Be it further resolved by the Mayor and Council aforesaid, that in the event the Mayor and Council of the City of Dalton have not fully settled with said Crown Cotton Mills for the use of water and other privileges aforesaid for the years preceding the present year, that all such settlements that have been made or should have been made are hereby fully concurred in by the mayor and council aforesaid, and are hereby, to all intents and purposes, ratified and confirmed, and as to all amounts due by the Crown Cotton Mills for services as aforesaid for preceding years, and the taxes due by said Crown Cotton Mills to the City of Dalton, are hereby considered and declared fully settled and squared off between the parties.' "

The answer of the Crown Cotton Mills set out that the city executed with it the contract above referred to; that it had paid $850 taxes each year to the city; and it set out in detail the nature and value of the benefits which the city had received from the privileges conferred upon it by the contract, the value of which' it claimed to be far in excess of any amount of taxes in excess of $850 which it would have been due the city; and that the indications were that this would be true so long as the present arrangement was carried out. It further averred: "It is further shown that it would be in vain and useless to require the property of this defendant within said city limits to be assessed for taxation, and to compel this defendant by tax execution to pay such taxes in cash into the city treasury merely to be by the city repaid to this defendant for the use of the water privileges and other rights now enjoyed by the city under said contracts, when it is manifest that the value of said privileges and rights far exceeds the amount of such tax." It is asked, in the event it is held that the city, under the law, must withhold the stipulated price, or any part thereof, that the court declare the right of the mills to a complete cancellation of the contract and a surrender of the spring and the rights and privileges now used by the city thereunder. It averred: "The use of said spring and rights and privileges now enjoyed by the city would be of much greater value to this defendant, if now surrendered by the city, than any possible amount of taxes that could be assessed against its property in the city limits at the present rate of taxation, and this defendant denies the right of the city to hold or enjoy the use of said spring or any of the rights and privileges

on any other consideration than that stipulated in said contracts; and if by reason of any constitutional prohibition the city is denied the power to comply with its stipulations under said contracts, then this defendant will insist on the surrender by the city of the use of the spring and of all other privileges enjoyed on defendant's property under the contracts aforesaid, this defendant being in need of said property rights and privileges for its own use and benefit. This defendant is willing to cancel the whole arrangement if desired, but so long as the city is willing to comply with the terms of the contract this defendant feels bound to comply with its obligation thereunder, although the entire cancellation of the contract would greatly benefit it. This defendant denies so much of paragraph five of plaintiff's petition as alleges that the tax has not been paid on defendant's realty in said city, and that the sum of $850.00 has been accepted each year in lieu of all of said taxes, defendant insisting, as hereinbefore shown, that in addition to the cash payment of $850.00 it paid the city each year in the use of water rights and other privileges greatly exceeding in value the amount of taxes which could have been assessed against it. This defendant shows that it has never consented to grant or surrender to said city the use of said spring and other privileges mentioned in the said contracts, on any consideration other than that named in said contracts, and does not now consent to do so, and respectfully denies the power of the court to make any other or different contracts for it. Whatever taxes may be assessed against this defendant by the city in excess of the sum of $850.00 in cash actually paid by it to the city, if any such is assessed, is, and ever will be, under the written contract aforesaid, a correct measure of the amount to be allowed to this defendant as payment for the use of said spring and other valuable rights and privileges conferred on the city by said contracts." Upon the hearing a motion to strike the answers of all of the defendants and make the mandamus absolute was denied, and the relator excepted. He also excepted to the order making the Crown Cotton Mills a party.

*M. C. Tarver* and *George G. Glenn*, for plaintiff.

*J. M. Neel, W. E. Mann,* and *C. D. McCutchen,* for defendants.

HOLDEN, J. (After stating the facts.)

1. Art. 7, sec. 2, par. 1, of the constitution of this State, embodied in Civil Code, § 5883, declares: "All taxation shall be uni-

form upon the same class of subjects, and ad valorem on all property subject to be taxed within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." Under the constitution, art. 7, sec. 2, paragraphs 2 and 4 (Civil Code, §§ 5884, 5886), no property can be exempted from taxation other than that specifically mentioned in par. 2. The property involved in the present case belongs to a class which is non-exempt. It is as unlawful to sell an exemption as it is to give it away. Municipal authorities can no more bestow on an owner of property subject to taxation an exemption therefrom for a consideration than they can bestow it gratuitously. It is true that municipal authorities, where they have the power to pay for certain privileges, have the right to make a binding contract whereby they agree to pay for such privileges an amount equal to the taxes which the owner of such property is liable to pay, provided that the amount of such taxes is a reasonable and fair compensation for the privileges contracted for, and the contract does not constitute an evasion of the laws prohibiting exemption from taxation. Such a contract does not exempt any property from taxation, or prevent the city from collecting the taxes assessed against the same. Under a contract of this character the city can collect from the owner of property the taxes assessed against it, although the city might owe the owner of the property an amount equal to the taxes. Under such a contract there is no agreement to exempt property from taxation, or to refrain from the collection of taxes thereon. But there is a radical difference between a valid contract of the nature referred to, and one whereby the authorities agree to charge the owner of property no taxes in consideration of privileges conferred by the owner upon the municipality. If the municipal authorities have the right to buy privileges of a certain character, they have the right to pay therefor any reasonable sum agreed upon, or a sum to be measured in a definite way by the amount of taxes which would be assessed against the owner, or against any other person, provided, as before stated, that the contract is reasonable and fair, and is not an attempt to evade the constitutional prohibition against exemption. A contract, however, which purports to bind the city to collect no taxes from the owner of property, in return for a valuable consideration, is clearly a sale of an exemption of such property by way of commutation of the tax, and is illegal under the

provisions of the constitution above referred to. The fact that the city, under a contract of this nature, may have received from the tax debtor benefits which in value equal or exceed the amount of the tax due can not deter the city from enforcing the collection of such tax, and any contract of this character purporting to bind the city so as to prevent the collection of its tax revenue is unlawful. *Cartersville Water Company* v. *Mayor,* 89. *Ga.* 689 (16 S. E. 70). Upon a careful consideration of the contract referred to in the statement of facts, we construe it to be an attempt by the city to sell to the mills an exemption of its property from taxation over $850, in consideration of certain water privileges and other benefits given the city by the mills, and therefore unlawful.

2. In *City Council of Dawson* v. *Dawson Water Works Company,* 106 *Ga.* 696 (32 S. E. 907), it was ruled: "Without the preliminary sanction of a popular vote as required by the constitution, a municipal corporation can not contract for a supply of water, on the credit of the city, for a longer period than one year; and a contract which by its terms is to run for twenty years, each year's supply to be paid for semi-annually from year to year, is operative from year to year so long as neither party renounces or repudiates it." It was further ruled in that case, "The City Council of Dawson has a right to make a contract to supply the city with water for one year, provided they have in the treasury of the city a sum sufficient to pay therefor, which may be lawfully appropriated for that purpose, or if such sum can be secured by lawful taxation levied during the year in which the contract is made. While a contract for a longer space of time is illegal, yet where the other parties to such a contract have complied with their part by erecting a plant at great expense in order to furnish the city with water, the city is liable for the amount stipulated in the contract for each year that it received the benefits thereof." The contract we are considering, however, independently of its feature of creating an unauthorized debt, is illegal because in it the city undertook to exempt the property of the mills from taxation. The pleas of the defendant municipality, properly construed, are to the effect that its authorities each year charged no taxes against the mills over and above the sum of $850, and the mills charged and collected from the city nothing for the privileges referred to in the contract as furnished to the city by the mills, and that all of this was done

pursuant to the contract outlined in the statement of facts. It is alleged in the answer of the Crown Cotton Mills that it would be useless to require the municipal authorities to assess its property and collect taxes thereon, when such action could only result in the city refunding the amount collected as taxes to compensate the mills for the benefits which it had conferred upon the city. The municipal authorities object to their being required to enforce the payment of taxes by the mills, on the ground that the latter, under the contract, owes the city no taxes. But the contract is illegal; and the municipal authorities can not avail themselves of it as an excuse for the non-performance of their duty to collect taxes which the mills are due under the law. To permit the city to refuse to collect taxes on the property of the mills because of the contract would amount to a recognition of its validity, and would be an enforcement of it by the courts as though it were legal. The municipal authorities do not in their answer admit that the city owes the mills anything other than by virtue of the contract which we have declared to be illegal. The mere fact that the city owes it an amount equal to or greater than the amount of its municipal tax does not prevent the city from collecting the taxes due by the former. *Cartersville Water Company* v. *Mayor,* supra; *Wayne* v. *Mayor, 56 Ga.* 448. The resolution of the municipal authorities, copied in the statement of facts, correctly interpreted, means that by reason of the contract they are willing to treat the amounts respectively due from the mills to the city, and vice versa, for the year 1909 and previous years as settled. The allegation in the amendment immediately preceding the copy of the resolutions set out in the amendment is as follows: "The present mayor and council, acting on this line, have passed a resolution ratifying the contract for the present year, and, as far as their power lies, ratifying the same for past years, which resolution is as follows:" This allegation, especially in view of the preceding allegations in the amendment, shows that whatever was attempted to be done by the resolution was in pursuance of the contract. There is no allegation in any of the answers that any actual settlement has been had between the city and the mills except in pursuance of the illegal contract, the only averments in this respect meaning that each year, under the contract, they had treated the taxes as being settled in consideration of the benefits received. Had there been, independ-

ent of this contract, any settlement between them of their respective obligations, whether the same would be binding or not, is not before us for consideration, and therefore not decided.

3. The plaintiff complains that the presiding judge erred in making the Crown Cotton Mills a party defendant, upon the motion of the municipal authorities. The mills were vitally interested in the question as to whether or not the contract between it and the city was valid, and whether or not the latter should proceed against it for the collection of the taxes alleged to be due. In the answer of the mills it was stated: "this defendant has no objection to being made a party defendant to said action, inasmuch as it is interested in the questions sought to be adjudicated by said petition." In 26 Cyc. 415, it is said: "Individuals or corporations who have a special legal interest in the subject-matter of a mandamus proceeding and whose rights will be collaterally determined by a judgment awarding the writ may properly be joined as parties respondent, and are generally required to be so joined." The court committed no error in making the mills a party defendant.

4. The plaintiff made a motion to make the mandamus absolute and to strike all of the answers of the defendants. In the case of *Southern Ry. Co.* v. *Atlanta Stove Works,* 128 *Ga.* 207 (57 S. E. 429), in referring to the decisions in the cases of *Hollis* v. *Nelms,* 115 *Ga.* 5 (41 S. E. 263), *Stromberg* v. *Bisbee,* 115 *Ga.* 346 (41 S. E. 573), and *Ray* v. *Anderson,* 117 *Ga.* 136 (43 S. E. 408), Justice Evans said: "None of these cases were decided by a full bench, and we are not absolutely bound thereby. We think the reasoning on which they are based is fallacious. See *Crew* v. *Hutcheson,* 115 *Ga.* 533 (42 S. E. 16) ; *Kelly* v. *Strouse,* 116 *Ga.* 890 [43 S. E. 280]. A motion to make a mandamus absolute necessarily involves a determination that the averments in the answer either afford or do not afford a sufficient reason in opposition to the issuance of the writ. If the answer avers matters which set forth no defense to making the rule absolute, in this day of directness in formulating the substantial issues by means of the pleadings its sufficiency is tested by the motion to make the rule absolute. . . The assignment of error that the court erred in making the mandamus absolute, because the allegations of the answer raised certain issues of fact which should first have been submitted to a jury, raises the question whether any issue of fact was made by the an-

swer." No issues of fact were made by the answers of the defendants, and the matters therein set forth offered no sufficient reason why the mandamus absolute should not have been granted. The court committed error in refusing the motion.

*Judgment reversed. All the Justices concur.*