RICHMOND COUNTY *et al. v.* STEED, tax-receiver, *et al.*

1. A tax-receiver may, in a proper case, be compelled by mandamus to give the notice as provided under the Civil Code (1910), § 1057, and to assess the property of a delinquent taxpayer as provided under the Civil Code (1910), § 1059.

2. In such a case the delinquent taxpayer is not, as a general rule, either a necessary or a proper party defendant.

3. Under section 5443 of the Civil Code (1910), mandamus will not be granted when it is manifest that the writ would for any cause be nugatory or fruitless; nor will it be granted on a mere suspicion or fear, before a refusal to act or a wrongful act done.

(a) It was not in this case erroneous to dismiss the proceeding for mandamus, and to tax the cost of the proceeding against the relators.

No. 1636. MAY 15, 1920.

Petition for mandamus. Before Judge Hammond. Richmond superior court. August 1, 1919.

The will of J. B. White, in which Judge E. H. Callaway of Richmond County, Georgia, was named as executor, was probated in the court of ordinary of Richmond County in 1917, and letters testamentary were duly issued to the executor named. The executor filed an inventory of the estate, from which it appeared that the testator at the time of his death owned more than a million dollars worth of stocks and bonds in foreign corporations, and other choses in action. These securities were in the possession of New York bankers. The commissioners of roads and revenues of Richmond county ascertained that none of this personal property had ever been returned for taxation in Richmond county. This information was brought to the attention of the tax-receiver, and he was requested to issue the statutory notice to the executor of the estate, demanding that he make a return of said property for the years 1911 to 1917 inclusive. On June 4, 1918, the tax-receiver issued the statutory notice. Before the expiration of the twenty days in which the executor had, under the statute, to make the return demanded, the receiver withdrew the notice. In December, 1918, Richmond County filed a petition for mandamus to require the tax-receiver to assess said property for taxation for the years named, upon the best information obtainable, alleging, in addition to the foregoing facts, that the testator was a resident of and domiciled in Richmond County, Georgia, at the time of his death, and that the tax-receiver in withdrawing the

statutory notice aforesaid was acting against the interest of the county and in the interest of the estate. Subsequently the State of Georgia intervened and was made a party plaintiff in the mandamus proceeding. In response to the mandamus nisi, the tax-receiver demurred and answered. In his answer he averred that the testator lived in Richmond County in 1910, but that he went abroad during that year and never returned to the State of Georgia, dying in Italy in 1917. He admitted that the testator owned at the time of his death, as shown by the inventory and appraisement, the securities aforesaid. He alleged that he did not know, and that he had no satisfactory evidence, that the testator owned the said securities from 1911 to 1917, inclusive, and that it was his official duty, as he conceived it, to act upon reasonably exact knowledge or information; that he did not know whether said securities were liable to taxation by Richmond County, in the circumstances aforesaid, and, if taxable, the value thereof. Subsequently Richmond County and the State of Georgia filed a petition in which it was alleged that the executor of J. B. White held said securities and was vitally interested in the issues involved; that said executor had influenced and prevented the tax-receiver from assessing said property, and by his interference with the said receiver had made himself a party in fact to the mandamus proceeding, and prayed that he be made a party upon the record, and be required to raise the question of the taxability of said property and the value thereof in the mandamus proceeding against the receiver. To this petition the executor demurred, upon the ground that he was neither a necessary nor a proper party defendant in said proceeding. Thereafter the tax-receiver amended his answer and alleged that he had, on June 10, 1919, issued a second notice to the executor, demanding a return of the aforesaid securities for the years 1911 to 1917, inclusive, and that in response to this notice the executor had filed a return. The relators filed an amendment to the petition for mandamus, setting out in detail the information which had been furnished to the receiver, and alleging that the returns as made by the executor were wholly inadequate and did not include the property sought to be taxed. They prayed that the returns made by the executor be rejected, and that the receiver be compelled to assess said property as required by law.

On June 14, 1919, the case came on before the judge for a hearing upon the pleadings, and the judge orally announced that he would not issue a mandamus absolute, but that he would retain jurisdiction of the case in order to permit counsel for the relators to take the depositions of the New York bankers. Certain depositions were taken, and in substance they disclosed that the testator owned, during the years 1911 to 1917, inclusive, stocks and bonds of the value of one and a quarter million dollars. This evidence was submitted to the tax-receiver, and on July 28, 1919, he rejected the returns as made by the executor, and assessed said stocks and bonds in accordance with such evidence for the years in question. Thereupon the receiver, by amendment to his answer, averred that he had so assessed the property, and prayed that the mandamus absolute be denied. The relators by amendment prayed that the assessment be confirmed, and that the same be held binding upon the executor, and that the cost of the proceeding, including an item of $250 as expense incurred by counsel in taking the depositions of the New York bankers, be taxed against the receiver.

On July 29, 1919, the judge passed an order sustaining the demurrer of the executor to the petition and refusing to make him a party defendant. At the final hearing before the judge on August 1, 1919, the court refused the mandamus absolute and dismissed the petition at the cost of the relators. The County of Richmond and the State of Georgia excepted, assigning error in the judgment sustaining the demurrer of the executor, in the judgment refusing to make the rule absolute and to confirm the assessment made by the receiver, and in taxing the cost against the relators.

*Pierce Brothers, A. L. Franklin,* and *W. K. Miller,* for plaintiffs.

*Cumming & Harper* and *Callaway & Howard,* for defendants.

GEORGE, J. (After stating the foregoing facts.)

1. Section 5440 of the Civil Code declares: "All official duties should be faithfully fulfilled; and whenever, from any cause, a defect of legal justice would ensue from a failure or improper fulfillment, the writ of mandamus may issue to compel a due performance, if there be no other specific legal remedy for the legal rights." Ordinarily the writ of mandamus is a remedy

for official inaction. *City of Atlanta* v. *Wright,* 119 *Ga.* 207 (45 S. E. 994). Where the act required to be done is imposed by law and is peremptory and absolute, and hence merely ministerial in its nature, the relator has a clear legal right to the writ and is without other specific remedy. Under section 5441 of the Civil Code, " Mandamus does not lie as a private remedy between individuals to enforce private rights, nor to a public officer who has an absolute discretion to act or not, unless there is a gross abuse of such discretion; but it is not confined to the enforcement of mere ministerial duties." Where the act required to be done involves the exercise of some degree of official discretion and judgment upon the part of the officer charged with its performance, the writ may properly command him to act, or, as is otherwise expressed, may set him in motion; it will not further control or interfere with his action, nor will it direct him to act in any specific manner. High on Extraordinary Legal Remedies (2d ed.), § 24. If the act which involves the exercise of official discretion and judgment under the law is performed under the compulsory process of the court, obviously the act is the act of the court, and not of the official required by law to exercise his discretion and judgment. Our decisions agree with the doctrine stated. See *Jackson* v. *Cochran,* 134 *Ga.* 396 (67 S. E. 825, 20 Ann. Cas. 219); *Wood* v. *Board of Education of Washington County,* 137 *Ga.* 808 (74 S. E. 540).

Under section 1055 of the Civil Code, the owner of property who has omitted to return the same for taxation at the time and for the years the return should have been made is required to do so for each year he is a delinquent, the return to be made under the laws, rules and regulations as they existed during the year for which he was in default. Section 1057 of the Code provides: " When the omitted property is of that class which should have been returned to the tax-receiver of the county, the said tax-receiver shall notify in writing such delinquent, requiring that he shall make a return thereof within twenty days." If the delinquent refuses to return his property after notice given him, " it shall be the duty of the tax-receiver to assess such property for taxation from the best information he can obtain as to its value for the years in default and notify such delinquent of the valuation, which shall be final, unless the taxpayer raises the question

that it is excessive, in which event the further procedure shall be
the same as provided by law when the value of returned prop-
erty is arbitrated." Civil Code, § 1059. We are of the opinion
that the writ of mandamus may properly command the tax-re-
ceiver to act; it will not compel the doing of any act in a speci-
fied manner which involves the discretion and judgment of the
receiver. For instance, the writ will not lie to fix the amount of
the assessment.

2. It is insisted that a proceeding for mandāmus, with respect
to the power of the court to make parties defendant, stands sub-
stantially upon the same footing as a suit in equity. The case
of *Tarver* v. *Dalton*, 134 *Ga.* 462, 471 (67 S. E. 929, 29 L. R. A.
(N. S.) 183, 20 Ann. Cas. 281), is cited in support of this con-
tention. In the opinion in that case, it was said: " The plain-
tiff complains that the presiding judge erred in making the Crown
Cotton Mills a party defendant, upon the motion of the munici-
pal authorities. The mills were vitally interested in the question
as to whether or not the contract between it and the city was valid,
and whether or not the latter should proceed against it for the
collection of the taxes alleged to be due. In the answer of the
mills it was stated: 'this defendant has no objection to being
made a party defendant to said action, inasmuch as it is interested
in the questions sought to be adjudicated by said petition.' In
26 Cyc. 415, it is said: 'Individuals or corporations who have a
special legal interest in the subject-matter of a mandamus pro-
ceeding and whose rights will be collaterally determined by a
judgment awarding the writ may properly be joined as parties
respondent, and are generally required to be so joined.' The
court committed no error in making the mills a party defendant."
The relator in that case was a citizen and taxpayer of the city. The
mandamus was against the municipal authorities to compel the
levy, assessment, and collection of the tax against the property
of the Crown Cotton Mills within the municipality. The munici-
pal authorities relied upon the validity of a contract with the
Crown Cotton Mills. The city was a party to the contract. The
Crown Cotton Mills, the other party thereto, did not object to
being made a party defendant to the action. No such issues
are raised by the tax-receiver in the present case. Technically
speaking, the only proper and necessary party defendant in a

mandamus case is the respondent.    However, the authorities generally agree that any person may be made a defendant who has an interest in the right sought to be enforced which will be collaterally determined by the judgment, if rendered as prayed. The rule is for the protection of the person so affected.   Some cases go to the extent of holding that the procedure is solely for the protection of such person.   See State *v.* Parsons St. R. etc. Co., 81 Kan. 430 (105 Pac. 704, 28 L. R. A. (N. S.) 1082, and note in 105 Am. St. R. 125).    The writ of mandamus is a common-law writ. *Bowen* v. *Whiddon,* 143 *Ga.* 351 (85 S. E. 122).   In *Gay* v. *Gilmore,* 76 *Ga.* 725, it was held: " The writ of mandamus is a common-law writ with which equity has nothing to do."   Mandamus is an extraordinary legal remedy.   In the instant case, as we have already indicated, the true scope of the writ is to set the tax-receiver in motion.   He can not be compelled to do in a specified manner any act which involves his discretion and judgment.   He can not be compelled to place any particular value upon the delinquent's property.   Hence, it would seem that the taxpayer is neither a necessary nor a proper party defendant to the proceeding.   Furthermore, the statutory methods provided for the levy, assessment, and collection of taxes, and particularly taxes of delinquents, are not merely cumulative; they are exhaustive.   See *State* v. *W. & A. R. Co.,* 136 *Ga.* 619, 626 (71 S. E. 1055), and cit.   The writ of mandamus against a taxpayer is not a remedy provided by statute for the collection of taxes.   A departure from the settled doctrine will result in confusion.   The settled policy of the State is that there shall be no judicial interference with the collection of taxes, except, of course, as provided by statute.   Our statutes permit the taxpayer to contest the taxability of his property by a suit in equity; and to have the valuation of his property fixed by a board of arbitrators.   See Civil Code, § 1059; Acts 1910, pp. 22, 24, 29 (Park's Ann. Code, §§ 1061, 1116 (d)).   The acts of the taxpayer did not amount to a waiver of his statutory rights.

3.   Under the Civil Code, § 5443, " Mandamus will not be granted when it is manifest that the writ would, for any cause, be nugatory or fruitless; nor will it be granted on a mere suspicion or fear, before a refusal to act or a wrongful act done." The tax-receiver had fully complied with the prayers of the pe-

tition; that is, he had called upon the executor to make a return of the specific property for the years in question; the executor had made a return, which was rejected by the receiver, and the receiver had assessed the property in accordance with the evidence submitted to him by the plaintiffs. This being true, the court properly declined to make the writ absolute.

Error is assigned in the judgment of the court taxing the costs against the relators, and in refusing to tax the costs against the receiver. It is insisted that the amount of $250 expended by the relators in going to New York and taking the testimony of the New York bankers should have been taxed against the receiver. If the receiver is liable for costs at all, it is needless to say that he is liable only for legal costs. The duties imposed upon the receiver by sections 1057 and 1059, supra, involve some degree of discretion and judgment on the part of the official, as heretofore held. The code does not limit the time in which the receiver is to call upon the delinquent to make a return of his taxes. It was not shown that the receiver had positively refused to require the executor to make a return under section 1057 of the code. Nor can it be said that a gross abuse of discretion in refusing sooner to require the executor to make a return was made to appear. In such circumstances it can not be said that the judge erred in taxing the costs against the relators.

*Judgment affirmed. All the Justices concur.*