GULLATT *et al.,* tax-assessors, *v.* SLATON *et al.,* arbitrators.

No. 13098.   MARCH 13, 1940.

*Spalding, Sibley, Troutman & Brock, W. S. Northcutt, Mac-Dougald, Troutman & Arkwright, Ellis G. Arnall, attorney-general,* and *B. B. Zellars, assistant attorney-general,* for plaintiffs.

*Frank Carter, James A. Branch,* and *John M. Slaton,* for defendants.   *Hirsch, Smith & Kilpatrick* and *Louis Regenstein Jr.,* for persons at interest.

REID, Chief Justice.   The board of county tax-assessors of Fulton County notified the administrator cum testamento annexo of the estate of Lindsey Hopkins of their assessment for ad valorem taxation of certain stocks and bonds alleged to have been owned by the deceased during the taxable years of 1931 to 1937, at stated amounts.   The administrator, expressly reserving his right to contest the validity of the assessments, invoked an arbitration under the Code, § 92-6912.   The duly appointed arbitrators entered upon a hearing, and thereafter, over the protest of the tax-assessors, determined that Lindsey Hopkins was not a resident of Fulton County, Georgia, in the taxable years in question, and concluded that the stocks and bonds had no taxable situs in Fulton County. Pursuant to this conclusion they declined to fix the value or to make any review of the values theretofore fixed by the board of tax-assessors.   The tax-assessors then filed their petition for mandamus to compel the arbitrators to assess the value of the property. Mandamus absolute was refused by the judge, and the tax-assessors excepted to this ruling.   The administrator of Hopkins was not made a party to the mandamus proceeding; and, somewhat aside from the main question involved, there is brought to our attention the point that failure to make him a party affords good reason for affirmance of the judgment.   This will be first disposed of.

■ On the question of who should be made parties defendant and respondents in a mandamus proceeding, we find the rule stated in 18 R. C. L. 230, § 278, as follows: "Technically in mandamus the only necessary parties are the plaintiff who asserts the right to have an act done, and the defendant upon whom the public duty rests to perform it. The practice is common and commendable, however, to bring in other persons who are likely to be injuriously affected by the judgment, in order that they may have an opportunity to be heard in their own behalf, and in a proper case the court will suspend proceedings until this is done. Reducing this general statement to a more definite rule, we may say that, generally speaking, all persons having any material interest, however slight, in the result of the litigation are proper parties respondent to an application for a writ of mandamus; whereas, when a person is shown by the petition in a proceeding for mandamus to have a legal interest in the right or duty sought to be enforced by the writ, and it also appears that the rights of such person will be collaterally determined by the judgment if rendered as prayed in the petition, the cause will not ordinarily be adjudicated until such person is made a respondent thereto, if he is shown to be within the jurisdiction of the court." In 26 Cyc. 415, it is stated: "Individuals or corporations who have a special legal interest in the subject-matter of a mandamus proceeding and whose rights will be collaterally determined by a judgment awarding the writ may properly be joined as parties respondent, and are generally required to be so joined." In *Walton* v. *Booth,* 151 *Ga.* 452 (107 S. E. 63), it was held that where the application for the writ of mandamus involved the validity of an election and persons claiming to have been elected were not made parties defendant, this "was sufficient reason for the refusal of the court to make the mandamus absolute." *McGinty* v. *Gormley,* 181 *Ga.* 644 (183 S. E. 804), was a proceeding where mandamus was sought to compel the superintendent of banks in his official capacity to take charge of the affairs and assets of a bank for the purpose of liquidation. The bank was not made a party, and failure to do so was ascribed as one of the reasons in support of the ruling that mandamus was properly refused. Cited as authority for this principle was *Smith* v. *Hodgson,* 129 *Ga.* 494 (59 S. E. 272), where the ruling was: "The writ of mandamus may be refused by the court, in the exercise of a

sound discretion, where the granting of the writ would in effect decide questions of importance between persons not parties to the proceeding, upon whom its enforcement would entail hardships and difficulties." In *Owen* v. *Butler,* 188 *Ga.* 645 (4 S. E. 2d, 635), where mandamus was sought for the purpose of compelling the county ordinary to open the ballot-box and examine the ballots in an election contest, one reason assigned for affirmance of the judgment denying mandamus was "that the contestee would have been adversely affected by any judgment for the plaintiff in the mandamus case, and he was not made a party defendant."

In the case now under review, before we may determine whether, under the rules hereinabove stated and applied in the cases mentioned, the failure to make the taxpayer a party was sufficient to authorize a refusal of the mandamus, we must examine somewhat into the statutes under which the tax-assessors and the board of arbitrators were proceeding. Under the act of 1913, known as the "tax-equalization act" (Ga. L. 1913, p. 123), certain provisions of law were enacted respecting the manner of assessing property for ad valorem taxation in the various counties, for adjustment of differences between taxpayers and taxing authorities by arbitration, and other machinery established for equalization of value, and providing means of getting property subject to taxation placed on the tax books either by return of the taxpayer or by assessment. The provisions of this act here important are codified in chapter 92-69 of the Code. By § 92-6911 it is made the duty of the tax-assessors "to see that all taxable property within the county is assessed and returned at its just and fair valuation, and that valuations as between the individual taxpayers are fairly and justly equalized, so that each taxpayer shall pay as near as may be only his proportionate share of taxes." Among other things, provision is there made for notifying any taxpayer of any assessment of property omitted from his returns or not returned by him. It was under this section that notice in the present case was given to the administrator of Hopkins as to the assessment of the stocks and bonds claimed by the tax-assessors to be subject to taxation for the years involved. The Code, § 92-6912, provides for arbitration "if any taxpayer is dissatisfied with the action of the board." Under this provision a method is fixed for selecting a board which consists of three arbitrators required to be freeholders, and "a majority

of whom shall fix the assessments and the property on which said taxpayer shall pay taxes, and said decision shall be final, except as far as the same may be affected by the findings and orders of the State Revenue Commission as hereinafter provided." Their decision is required to be made within ten days. And "Before entering upon a hearing the arbitrators shall take an oath before the tax-receiver or before the chairman of the board of local assessors, who is hereby authorized to administer oaths, that they will fairly and impartially make a true and just assessment of the tax returns and property in question, and will determine the matters submitted to them, according to law and justice and the equity of the case."

At the bottom of the whole controversy the main question in the case, if we are permitted to pass on its merits, is whether under this statute the arbitrators have the duty, the power, and the jurisdiction to determine whether the taxpayer is liable to pay the taxes, and pass upon the taxability of the property sought to be taxed, which may involve questions of law as well as fact, or whether their function is limited to a review of findings of value made by the tax-assessors and to a fixing of the assessment by the arbitrators "of the tax returns and property in question." The tax-assessors, seeking a mandamus to compel the arbitrators to fix assessments and to pass upon value, contend that the function of the arbitrators is limited to that alone; that determination of taxability involving questions of law comprehends the exercise of judicial power, and is reserved to the courts, and was not committed by this statute to the board of arbitrators; that under various applicable statutes, taken in connection with this particular statute under which the arbitrators get their power, provision is amply and specifically made for the taxpayer to contest taxability by petition in equity; that value, being a matter of opinion, is made final by the action of the arbitrators, or by the assessors if no arbitration is taken; that to construe the statute to vest in the arbitrators power to determine taxability (in the present case depending upon the legal domicile of the decedent and the taxable situs of personal property) would be to render it unconstitutional as depriving the taxpayer of due process of law, by reason of its provision that the findings of the arbitrators shall be final; and that certiorari will not lie to the findings, because the board is neither an inferior judicatory nor a body exercising judicial powers. Code, § 19-101.

On the other hand, the arbitrators and the administrator of Hopkins, who has filed a brief as a person at interest, contend that the duties of the board of arbitration are somewhat coextensive with those of the board of tax-assessors, and that since the arbitration is provided for a taxpayer who "is dissatisfied with the action of the board," and since the board of tax-assessors not only fix the value but select the property sought to be taxed, and by the language of the section the arbitrators are directed to "fix the assessments and the property on which said taxpayer shall pay taxes," that they are thus given the power and duty of passing upon all questions whether of law or of fact, to determine the liability of the taxpayer. In these circumstances, with the arbitrators having determined that Hopkins was not a resident of Fulton County during the taxable years involved, and that the personal property which had been assessed had no taxable situs in the county, and therefore having determined that there was no reason for reviewing questions of valuation or fixing assessments, what would be the situation as to the necessity of the administrator being made a party defendant in the action for mandamus which seeks to compel the arbitrators to pass upon valuation? Such an action, if successfully maintained, would require a holding to the effect that the judgment of the arbitrators, already rendered in favor of the administrator, was void for want of power or jurisdiction to pass upon the questions at issue.

If this judgment of the arbitrators is valid, perhaps the effect of it would be to relieve the Hopkins estate from the liability sought to be imposed by the tax-assessors, since no appeal was taken from it, there being no provision in the statute for an appeal. It is true that if mandamus were granted, the effect of it would not be to cast any liability for taxes against the administrator; the necessary effect of a decision agreeable to the contentions made by the board of tax-assessors would be to go forward with a hearing as to value of the property involved, at which the administrator would be accorded full opportunity to be heard. The further effect would be that the way to contest his liability and establish his foreign domicile would be open to him by petition in equity. Such effect would be as if nothing had happened since the arbitrators qualified. The parties would be back where they started. It has been held that in a mandamus proceeding to compel a county tax-receiver to make

an assessment against a taxpayer, the taxpayer is not a proper or necessary party; this on the theory that the effect of granting the mandamus would be merely to set in motion the machinery for assessment and collection of the tax, as to which, once it was in motion, the taxpayer would have opportunity to be heard. In *Richmond County* v. *Steed,* 150 *Ga.* 229 (103 S. E. 253), the ruling was: "In such a case the delinquent taxpayer is not, as a general rule, either a necessary or a proper party defendant." It was pointed out that the mandamus sought in that case did not seek to compel any particular judgment or assessment, but only *some* assessment, and that the taxpayer could later be heard. In this connection it was said: "Mandamus is an extraordinary legal remedy. In the instant case, as we have already indicated, the true scope of the writ is to set the tax-receiver in motion. He can not be compelled to do in a specified manner any act which involves his discretion and judgment. He can not be compelled to place any particular value upon the delinquent's property. Hence it would seem that the taxpayer is neither a necessary nor a proper party defendant to the proceeding." In the present case also it is true that if mandamus were granted, the taxpayer, as we have pointed out, could still be heard, and the writ would not compel the arbitrators to render any particular judgment.

It is seen from a consideration of the situation that prevailed in *Richmond County* v. *Steed,* supra, that when the mandamus was sought nothing had happened. It was to correct non-action. It was at the threshold, and was intended to *bring on* a proceeding against the taxpayer, and, as pointed out, would not, if granted, compel any particular judgment or assessment. So in the present case, although an additional step forward had been taken, in that the assessment had been made and the arbitration invoked, the mandamus nevertheless is directed at *non-action,* and would not compel any particular finding by the arbitrators, but only that they make *some* finding which they had declined to do. After the finding should be made, opportunity would still be afforded to the administrator to present his case and be heard. He would be heard on value before the arbitrators whose decision would be final, and, on taxability, by his petition in equity. It is true that in the present case the taxpayer had obtained a favorable judgment on the question of his foreign domicile, and there had been no appeal from

it, none being provided in the statute; and if this judgment were valid and would conclude the question of his liability for tax, he would be vitally interested in the legal questions presented by the mandamus proceeding. But, if the arbitrators had no power to render such a judgment (and this would be the premise upon which the grant of the writ would be predicated), then such a judgment was void and might be treated as no judgment at all. See Code, §§ 110-701, 110-709. And in depriving the taxpayer of its claimed benefit no loss would be suffered by him. No subsequent right as to his tax liability would thus be "collaterally determined." "The fact that points of law may be determined in the courts of litigation that will make a precedent harmful to the interests of certain persons in some future litigation is not sufficient reason for making such persons parties." 38 C. J. 854.

The present case differs, as did *Richmond County* v. *Steed,* supra, from situations like that presented in *Tarver* v. *Dalton,* 134 *Ga.* 462 (67 S. E. 929, 29 L. R. A. (N. S.) 183, 20 Ann. Cas. 281), where it was held not to be error to require one of the parties to a contract, whose validity was challenged in connection with the mandamus proceeding, to be made a party respondent. It is also distinguishable from such cases as *Owen* v. *Butler* and *McGinty* v. *Gormley,* supra. In such cases as these the important rights of persons not made parties were actually being or attempting to be adjudicated; whereas the effect of the grant of mandamus in the case sub judice would be merely to require that the rights of the taxpayer be subsequently adjudicated in a proceeding for the purpose, to which he would become a party. A somewhat similar situation was dealt with in People *v.* Webb, 256 Ill. 354 (100 N. E. 224 (3)), where it was ruled: "On mandamus to compel a board of review to post for taxation personal property omitted from assessment in previous years, the owners of such property are not necessary or proper parties, since the mandamus, if awarded, will not conclude the property owners on any question affecting their rights." And "They will have an opportunity to appear before the board of review when notified, and show any cause they may have why the alleged omitted property should not be assessed to them." So we conclude that this point is not well taken; and while not ruling that he may not have been a proper party, we hold that the failure to bring him into the proceeding as a respondent is not sufficient to authorize refusal of the mandamus.

■ One further point is made, which we should consider before reaching the main question. .It is insisted that the petition for mandamus does not sufficiently allege that Hopkins was not a resident of Fulton County; and that unless it should so allege, mandamus should be denied, since, as contended, unless he was a resident during the taxable years involved, the property would have no taxable situs, and that the Code, § 64-106, should be controlling. The allegation is in substance that the board of tax-assessors obtained information "that while Lindsey Hopkins, who died on August 17, 1937, claimed that he was domiciled in Dade County, Florida, for the years 1930 until his death, he was in fact during that period a resident of and domiciled in Fulton County, Georgia." Taking this allegation with the fact that the tax-assessors proceeded upon such information to make the assessment involved, along with the presumption that attaches to the acts of public officials that they perform their duty, we consider this point without substance.

■ Under the rulings in *Columbus Mutual Life Insurance Co.* v. *Gullatt,* 189 *Ga.* 747, and *Allied Mortgage Companies Inc.* v. *Gullatt,* 189 *Ga.* 756, the board of arbitrators provided for in the Code, § 92-6912, are not vested with authority to determine questions of taxability, but are limited to a review and determination of values respecting the property assessed for taxation. It follows that the arbitrators in the present case failed to perform their duties prescribed by law, and that the court erred in refusing a mandamus. The right of the tax-assessors to institute the mandamus has not been questioned, and we have not passed on this question.

*Judgment reversed. Bell, Jenkins, and Grice, JJ., and Graham and Pratt, JJ., concur.*