## NORRIS *et al. v.* COLEY.

1. Where realty is not returned for taxation and the owner thereof is known to the tax-receiver, the latter must, under section 847 of the Political Code, enter upon the digest a return of the property in the defaulter's name, and in such case the execution for the tax must be issued against him. Where the tax officer does not know who is the owner or possessor of the unreturned land, the property itself must, under section 848, be assessed for taxation, and in that event the execution for the tax is, under section 908, to be issued against the property and not against the taxpayer.

2. A tax-collector has no authority of law to issue a tax execution against land in rem if its owner is in possession thereof at the time when it becomes the officer's duty, because of the owner's having made default in returning the land, to make a return for him.

3. An execution issued under such circumstances against the land is a nullity, for want of jurisdiction in the officer to issue it; and consequently a sale thereunder is absolutely void.

4. This case upon its facts is controlled by the law as above laid down, and the losing parties have no just or legal cause for complaining of the verdict rendered.

Submitted November 17, 1896.   Resubmitted March 1,—Decided March 12, 1897.

Equitable petition.   Before Judge Bower.   Baker superior court.   November term, 1895.

*D. H. Pope*, for plaintiffs in error.
*Wooten & Wooten*, contra.

FISH, Justice.

The tax-collector of Baker county issued an execution against lots of land 254 and 255 in the 8th district of said county, for the amount of taxes assessed on said lots for the year 1892, as property unreturned for taxation, the owner of which was unknown.   Armed with this execution as his

authority, the sheriff of the county levied upon, advertised
and sold said lots, J. T. and C. E. Norris becoming the pur-
chasers of the same, paying twenty-one dollars for one and
sixty dollars for the other. At the time when the tax-collec-
tor issued his fi. fa., prior thereto, and at the time of the sale,
Coley was the owner and occupier of said lots, they being
part of a single tract of land which composed his farm, his
residence being located upon one of them. Coley brought
his petition to enjoin the Norrises from interfering with his
possession and enjoyment of these lots, to have the sale of
the same under said tax execution set aside, the deeds made
by the sheriff to said purchasers cancelled and the cloud
upon his title removed. Coley alleged that he did not know
of the sale of the land for taxes until more than a year had
elapsed thereafter, and that immediately after this informa-
tion came to him he tendered to the defendants the amount
of money which was necessary in order to redeem the land,
which they refused to accept. The defendants denied
Coley's allegations as to his want of knowledge about the
sale, alleged that he had repeatedly been informed of said
sale, and of their purchase thereat of these lots, before the
expiration of twelve months after the sale, and had been ad-
vised and told to redeem them, which he stubbornly refused
to do until the statutory period of redemption had expired.
But these and other allegations and denials in the case are
not material to its determination; for, upon its uncontested
facts, the law as set forth in the head-notes is bound to con-
trol it, whether these disputed issues of fact were decided
one way or the other. Technically speaking, Coley had not
returned these lots for taxation; for the law requires land-
owners to return their lands by their numbers, and Coley,
while returning to the tax-receiver the full number of acres
of land which he owned, returned these two lots as a part of
his plantation, by mistake, as numbers 250 and 279, he not
owning any lots having those numbers. Practically, there-
fore, he did return them for taxation. While this seems to

..affect the substantial justice of the case, the question as to whether or not it affects the law of it need not be considered; because, as will be seen hereafter, in our opinion the case is ..obliged to be decided in Coley's favor upon other grounds.

1. Section 847 of the Political Code provides that, "If a person fails to make a return, in whole or in part, or fails to affix a value to his property, it is the duty of the receiver to make the valuation and assess the taxation thereon, and in all other respects to make the return for the defaulting person from the best information he can obtain, and having done so, he shall double the tax in the last column of the digest against such defaulters, after having placed the proper market value or specific return in the proper column," etc. Section 848 provides that, "If there is taxable property, real or personal, in a county, that to the satisfaction of the receiver, when he comes to conclude his digest, is not returned by any person, and he does not know the owner or possessor, it is his duty to assess and double-tax it, describing it particularly; and the same power is conferred on the tax-collector as to such property, when not assessed, or overlooked by the receiver." Section 908 says: "When property is assessed for taxes which has not been returned by any one, as soon as assessed the tax-collector shall at once issue execution against it for the amount due and costs, and the sheriff shall advertise it for sale in some public gazette ninety days before the day of sale, and if by said day the taxes are not paid, it shall be sold: provided, renting or hiring will not bring the requisite amount. Whatever overplus there may be shall be paid over to the ordinary as a part of the educational fund, with a statement of the property and account of sales, subject to the claim of the true owner within four years." It is evident from the first quoted section, that where realty is not returned for taxation and the owner thereof is known to the tax-receiver, such officer must enter upon the digest a return of the property in the defaulter's name, and, in such case, the execution for the taxes must be issued against him,

as it would be issued in case the taxpayer himself made the return and failed to pay the taxes. From the second section quoted, it is equally clear that where land is unreturned for taxation, and the tax officer does not know who is the owner or possessor thereof, the assessment must be made by the officer upon and *against* the property itself, and as in such case the tax is assessed against the land instead of against its owner, the execution is, under section 908, to be issued in rem and not against the taxpayer. Clearly then if the owner or possessor of the property, which has not been returned for taxation, is known to the tax officer, he must make a valuation of it in the name of such owner or possessor, assess the tax thereon, and "in all other respects make the return for the defaulting person from the best information he can obtain." He cannot, if he knows who is the owner or possessor of the property, assess it as property whose owner or possessor is unknown; nor in such case can an execution be issued against the property itself.

2. When, then, in contemplation of law, is the owner or possessor of property, which has not been returned for taxation, unknown to the tax officer; or when can it legally be said that such official does not know who is the owner or possessor of such property? Can the officer be legally held to have been ignorant in this respect, if it be conclusively shown that he could, with but slight effort, have obtained the requisite information? Does not the law which gives him the authority to assess the property for taxation, if the owner or possessor thereof be unknown to him, imply a duty upon his part to use reasonable diligence to ascertain the owner or possessor, before he thus assesses the property? We think so. As it is only the want of such information which confers upon the tax-receiver, or collector, the authority to assess the property as that of an unknown person, and to issue, or in the case of the receiver, authorize the issuance of, an execution against the property itself instead of against the person liable for tax on it, it seems clear to

us that it is the duty of such officer to use ordinary diligence in endeavoring to ascertain who is the owner or possessor of the property, before he determines that it is liable to be assessed by him for taxation and sold, under a tax execution, as that of an unknown person. Can it legally be said that he does not know who is the owner or possessor of land, when the owner is in actual possession of it, living upon it, and cultivating it? We apprehend not. It has been held that, "a tax assessor is not authorized to assess and advertise for sale, as the property of an 'unknown' person, when it appears that he could, with ordinary diligence, have ascertained who the real owner was." Rapp *v.* Lowry, 30 La. Ann. 1272. In that case Marr, J., said, "We do not think the assessor can assess lands as the property of a person 'unknown' without having first honestly endeavored to ascertain the name and residence of the owner." The Supreme Court of Alabama decided that, "Lands cannot lawfully be assessed to 'unknown owner,' if at the time of making the assessment the officer had the means of ascertaining, by proper inquiry and search, who the owner was—such as the owner's occupation or open possession, or other information which would make known the owner; and having such means of information, he cannot assess the lands to 'unknown owner'; and sale under the assessment would be void." Oliver *v.* Robinson, 58 Ala. 46. Stone, J., delivering the opinion of the court, said: "Possession and occupation of lands, in the absence of all other proof, is prima facie evidence of ownership, and is constructive notice to all persons acquiring an adversary interest, of every right, legal or equitable, which such possessor owns. . . When the owner or claimant, or any one holding under him, is in the actual occupation, the assessor is without excuse for assessing such lands to 'owner unknown.'" We think that the authority conferred upon the tax officer to assess property as that of an unknown person is based upon a want of knowledge as to the owner or possessor thereof, after an honest and reasonable effort to

obtain it; and if such knowledge is accessible to the officer by the use of ordinary diligence, he cannot legally be said to be without it. Such an effort in the present case would have surely informed the tax official who was the owner or possessor of these two lots of land. Certainly, by a very slight inquiry or investigation, he could have ascertained who was the possessor of them. For Coley, the owner, was living upon one of the lots, cultivating both of them, and each of them formed a part of a single tract of land comprising his plantation. There was, therefore, no legal authority or excuse for assessing these lots as property the owner or possessor of which was unknown.

3. In order to compel the contribution of the landowner to her support, the State, with strong hand, seizes his property, and, brooking no legal interference with the speedy accomplishment of her purpose, without the intervention of judge or jury, by a public sale of the land, she divests him of his title and confers it upon another. It is true that she mitigates the severity of her procedure by providing that the owner may redeem the property, within a given period, by repaying to the purchaser the amount of money which he has expended, together with a prescribed premium thereon. But the summary remedy to which she resorts when, in the exercise of her sovereign power, she thus seizes and sells a person's land, is in derogation of the established principles of the common law, and is in great measure ex parte. Therefore, the statutes from which the power of her officer to seize and sell land can only be derived are to be strictly construed. Black, in his valuable work on Tax Titles, deduces, from the authorities on the subject, the following general rule: "In order that a sale of land for taxes should be valid and unimpeachable, and should pass a good title to the purchaser, it is necessary that all the preliminary requirements of the statutes, made conditions to the exercise of the power, and designating the various proceedings which are to culminate in the sale, should have been strictly com-

plied with, and that the officers who execute the power should follow with precision, in so doing, the course marked out for them by law, and that the conditions subsequent to the sale, if any, should be duly observed." He says that, "Upon this point the authorities are unanimous." (Black on Tax Titles, §155.) And Cooley, the learned jurist, says: "Tax sales are made exclusively under a statutory power. The officer who makes them sells something he does not own, and which he can have no authority to sell, except as he is made the agent of the law for the purpose. But he is made such agent only by certain steps which are to precede his action, and which, under the law, are conditions to his authority. If these fail, the power is never created. If one of them fails, it is as fatal as if all failed. Defects in the conditions to a statutory authority cannot be aided by the courts; if they have not been observed, the courts cannot dispense with them, and thus bring into existence a power which the statute only permits when the conditions have been fully complied with. Neither, as a general rule, can the courts aid the defective execution of a statutory power; they may do this when the power has been created by the owner himself, and when such action would presumptively be in furtherance of his purpose in creating it; but a statutory power must be executed according to the statutory directions; and, presumptively, any other execution is opposed to the legislative will, instead of in furtherance of it. It is, therefore, accepted as an axiom when tax sales are under consideration, that a fundamental condition to their validity is that there should have been a substantial compliance with the law, in all proceedings of which the sale was the culmination. This would be the general rule in all cases in which a man is to be divested of his freehold by adversary proceedings; but special reasons make it peculiarly applicable to the case of tax sales." We have quoted from these well known authors in order to show the stringency of the general rule applied by the courts of this

country in cases involving the validity of tax sales. It will be seen, from the above quotations, that the stringency of the general rule applies not only to the conditions which must exist before the power to sell is created in the officer, but also to the regulations prescribed by the statute as to the manner in which this power shall be executed. This is the rule that obtains in most of the States of this Union. This was the rule which prevailed in Georgia prior to the adoption of our code. *Brooks* v. *Rooney*, 11 *Ga.* 423. This court has decided, however, that since the adoption of the code executions issued for State and county taxes stand on the same footing, as to the levy and sale of the property, as executions issued upon judgments at law. *Byars* v. *Curry*, 75 *Ga.* 515. So that now when property is sold for State and county taxes, the rule *as to the levy and the sale* is no more strict than the one applied in cases of sales under judgment and execution. The modification, by our code, of the general rule, does not render such a tax sale as the one now under consideration a valid one. For in this case the tax officer had no *jurisdiction to issue* an execution against the land, and the execution issued by him against it was a nullity, and consequently the sale thereunder was absolutely void.

4. This case, upon its admitted facts, is controlled by the law as above laid down, and the losing parties have no just or legal cause for complaining of the verdict rendered.

*Judgment affirmed. All the Justices concurring.*