DuBIGNON *v.* MAYOR etc. OF BRUNSWICK *et al.*

1. "Ignorance by both parties of a fact does not justify the interference of the court."
2. The clerk of the city council of Brunswick has authority to issue executions for municipal taxes due the city on assessments regularly made for previous years, where there has been a failure on the part of the clerk to issue such executions during the years for which the assessments were made.
3. The General Assembly has the power to amend the charter of a city so as to change its laws touching the advertisement for sale of property for taxes, and such act is not unconstitutional because it applies to taxes due at the time of its passage.

Argued November 23, — Decided December 21, 1898.

Petition for injunction.    Before Judge Sweat.    Glynn supe-
rior court.    September 10, 1898.

*Goodyear & Kay,* for plaintiff.    *Owens Johnson,* for defendants..

SIMMONS, C. J.    1, 2.    Our learned brother in the court be-
low, in refusing an injunction in the present case, rendered a.
written opinion giving the reasons why the injunction should
not be granted.    That opinion so well.expresses our views of
the law, that we adopt it as our own, except in reference to
the question ruled on in the third headnote, with which the
judge did not deal.    The opinion is as follows.

"Briefly stated, it appears that the Oglethorpe Hotel prop-
erty in the City of Brunswick was by contract released from
municipal taxation for the term of seven years, which expired
December 31, 1893.    The plaintiff, John E. duBignon, pur-
chased and became owner of said property in February, 1894.
Under the charter of the City of Brunswick, provision is made
for the appointment and qualification of three assessors whose
duty it is to assess and value annually all real estate in said
city liable for taxation, at a true and just valuation, and to en-
ter their assessment of the same in a book to be kept for that
purpose, to return the same to the mayor and aldermen of the
city and file it with the clerk of council of the city on or be-
fore the first day of March of each and every year.    After said
return is made and filed, on or before the first day of March in
each and every year, every person claiming real estate so as-
sessed shall return his name to the clerk of council of said city
and write the same opposite the property claimed and owned
by him.    If any assessment shall be deemed erroneous, the
owner who may be dissatisfied with any such assessment shall
have the privilege of making complaint within twenty days
after the date of the report of the assesssors, and upon such com-
plaint being made, the assessment complained of shall be im-
mediately referred to three arbiters, to be chosen as provided,
whose award in the matter shall be made within ten days and
shall be conclusive and final.    If, on the first day of May of
any year, there is any real estate in the city which has not
been so returned by the owner or claimant thereof, it shall be

the duty of the clerk of council to issue an execution against such real estate which has not been so returned by the owner thereof, as non-returned property, describing the same, and directed to the marshal of the city, requiring him by levy and sale of the property to make the amount of taxes due on said property for that year. It appears that in the year 1894 and for each year thereafter, including the years 1895, 1896, 1897 and 1898, said Oglethorpe Hotel property was duly and regularly assessed for taxes according to the tax rate fixed for each of said years by the mayor and aldermen of the city; that John E. duBignon, the owner thereof, laboring, he claims, under the impression that the term for which said property had been released from taxes had not expired, failed to make return of the same and appeal from the valuation fixed by the board of assessors to a board of arbiters, as provided for; and that during said years up to 1898, the clerk of council, laboring under a like impression, failed to issue executions against said property for the taxes due thereon annually. In 1898 the present mayor and council of the city of Brunswick, ascertaining that said property was in arrears for the taxes due thereon for said years, had the clerk of council to issue executions therefor and caused the same to be placed in the hands of the marshal for collection and said property levied on and advertised for sale; whereupon the plaintiff filed his petition as aforesaid, claiming, among other things, that for each of said years said property had been assessed largely in excess of its true and just valuation, and that by reason of a mutual mistake of fact as claimed, existing both upon his part and that of the mayor and council, as to the term for which the property had been released from taxes having not yet expired, he should be allowed to make return thereof and appeal to a board of arbitration, with a view of having the value fixed thereon by the assessors reduced and the taxes to be paid thereon proportionately reduced. And the claim is also made upon the part of the plaintiff, that the power to issue executions for back taxes, due in preceding years, is not vested in and can not be legally exercised by the clerk of council, but that such taxes, due in preceding years, and for which executions were not issued in those years, become debts the collection of which must be enforced by an action at law.

"There are but two questions arising in this case which I deem it necessary to consider and pass upon, and these are: First. Whether the failure of the plaintiff to make his return for said Oglethorpe Hotel property and enter an appeal from the valuation fixed thereon by the assessors within the time prescribed, during each of the years aforesaid, was caused by such mistake of fact as would authorize a court of equity to grant the relief prayed for. Second. Whether the tax executions issued by the clerk of council for the back taxes due on said property, in each of the preceding years stated, were issued without any power to do so, and therefore illegally issued. For the purposes of this case, I deem it wholly immaterial as to whether the contract releasing or exempting said Oglethorpe Hotel property from taxes was legal or illegal, inasmuch as the time for which it was made had expired and no claim is made for taxes accruing during the period of exemption. It is conceded that easy reference to the contract could at any time have been had by the plaintiff or by either of said parties. Section 3984 of the Civil Code is in these words: 'If the party, by reasonable diligence, could have had knowledge of the truth, equity will not relieve; nor will the ignorance of a fact, known to the opposite party, justify an interference, if there has been no misplaced confidence, nor misrepresentation, nor other fraudulent act.' And again, in section 3985, it is stated, 'Ignorance by both parties of a fact does not justify the interference of the court.' Under these plain provisions of our code, it would appear that there had been no such mistake of fact upon the part of the parties as would be relievable in a court of equity. It should be remembered that property-owners are limited in each year to a period of twenty days, after the date the assessors make their returns, in which to appeal to arbitrators, and upon failure so to appeal within that period, they are thereafter barred from said right. In the case of *Adams* v. *Guerard*, 29 *Ga.* 651, Stephens, J., delivering the opinion of the court, said: 'It was said that equity will relieve from a mistake of law as well as from a mistake of fact, and that the statute [of limitations] does not begin to run till the discovery of the mistake. It is too late to deny, in this court,

that there are mistakes of law as well as mistakes of fact which will be relieved in equity; but I apprehend relief was never granted from such a mistake as this. Those mistakes from which relief has been granted were mistakes which occurred in doing something, not in doing nothing; they were mistakes of action, not of mere inaction. When one has contracted or acted on a false assumption of fact or of law, equity may relieve him from the effects of the action, and will not begin to count time against him until the discovery of the mistake; but where he has simply lain still, under a mistaken assumption of either fact or law, without having ever acted at all, it is not a question when time will begin to be counted against his relief, but it is a case where no relief will be granted at any time from the effects of his inaction. . . . Still the question remains, whether it is such a mistake as will put a court of equity in motion. When once in motion, it will relieve and will count time only from the discovery of the mistake; but it is only a mistake on which there has been action that will put it in motion. Mere inaction, in a case where the statute makes it a bar, is a bar in equity as well as at common law.'

"Again, in the case of *Bohler* v. *Verdery*, 92 *Ga.* 715, it appears that the defendants in error made returns of their property for State and county taxes for the year 1891 to the tax-collector of Richmond county, and that he accepted the same without objection; that afterwards a board of assessors, under an act then in force for Richmond county, assessed the property of the defendants in error and increased the valuation beyond that given in the returns. Executions for taxes based on these assessments were issued, and the defendants in error filed their petition to enjoin the tax-collector and the sheriff from further proceeding to enforce the executions, upon the ground that the act referred to was unconstitutional. The invalidity of the act was conceded and was regarded as settled under the decision in the case of *Stewart* v. *Collier*, 91 *Ga.* 117. It was claimed, however, that the tax-collector acted under a mistake of law, that he was dissatisfied with the returns, and, but for his belief that the returns had to be passed upon by a board of assessors under the act in question, he would have insisted upon the ap-

21

pointment of arbitrators according to section 840 of the Civil Code. The defendants prayed that the petitioners be required to do equity and to submit their returns to three disinterested persons, under the provisions of the section referred to, who should fix an assessment upon the property, and that the petitioners be required to pay a tax for the year 1891 upon the assessment so made. Mr. Justice Simmons, delivering the opinion of the court, said: 'The authority of the tax-receiver to assess property where a return has been made is derived from section 839 of the code, and is limited to the time prescribed in that section. The language of the section is as follows: "Each return shall be scrutinized carefully by the tax-receiver, and if, in his judgment, he shall find the property embraced in the return, or any portion of it, returned below its value, he shall assess the value at once or within thirty days thereafter." The courts can not enlarge or extend the scope of the statute by granting further time if the tax-receiver fails to act within the time prescribed; nor can they, at his instance, require the taxpayer to submit to an assessment by arbitrators, under section 840 of the code. Certainly the fact that the tax-receiver believed or relied upon the belief of others that an invalid local statute was valid and superseded the law above referred to, so far as the particular county was concerned, and that his failure to act was due to this cause, could not give the court any power in the matter. The principles which authorize a court of equity to relieve against mistake have no application to the case. The tax-collector is bound to know the law regulating his official duty ; and for his error of judgment in reference thereto, no responsibility can attach to the taxpayer. [Authorities cited.] Moreover, mistake implies action, and here there was no action at all.' Then follows citation of authorities, including the case of *Adams* v. *Guerard,* supra, from which quotation is made with approval of a part of the decision hereinbefore stated. Clearly to my mind, under the rulings of our Supreme Court, this court is powerless upon this question to grant any relief to plaintiff.

"Now upon the other question, the principal authority relied upon for plaintiff is the case of *D'Antignac* v. *City Council*

*of Augusta,* 31 *Ga.* 700, wherein Jenkins, J., delivering the
opinion, holds that in proceedings under statute authority
whereby a man may be deprived of his property, the statute
must be strictly pursued and compliance with all its prerequisites
must be shown, and, speaking of the Augusta ordinance, says:
'Clearly, then, the ordinance contemplates that execution shall
issue against defaulters before the expiration of the term of office
of the collector within which the default was made; or, in other
words, within the same fiscal year (of the corporation) in which
default was made. But, by the ordinance, the issue of exe-
cution must be preceded by a return of the defaulter, *ergo* such
return must be made before the expiration of the collector's
term of office — before the expiration of the fiscal year within
which default was made.' And again: 'This construction is
strengthened by consideration of the nature of this corporation
and the object for which it assesses taxes. It is a corporation
created for municipal government, and it is permitted to assess
and collect taxes annually to defray the annual expenses of
that government. It should assess no higher taxes than are
necessary for that purpose; and keeping within this rule, there
rests upon it both a duty and a necessity to collect, within the
year, the taxes assessed in and for that year. If we have correctly
construed this ordinance, and correctly stated the general law
governing ex parte summary, statutory proceedings (of which
this is one), shall it be said that after ten years of non-action the
defendant in error may cause a demand for taxes to be made, then
a return of the taxpayer as a defaulter, then the issue of execution
ex parte against him, whereby his property may be sold and his
title thereto divested, without a hearing — a day in court allowed
him? We think not. We hold that the defendant in error,
by refraining so long from any attempt to enforce payment of
these taxes, or to place the taxpayer in the predicament of a
defaulter, has lost this summary ex parte remedy against him,
and must resort to suit at law or in equity as in other cases be-
tween debtor and creditor.' Very much of this should doubt-
less be considered merely obiter dicta upon the part of the
learned judge delivering the opinion; for it will be found upon
an examination of the case in question that the Augusta ordi-

nance, among other things, provided that 'It shall be the duty of the collector and treasurer to give notice in one or more of the gazettes of the city, and to call at least once at the house of each person taxed, to demand the taxes; and unless said taxes be paid within two months from the date of said notice, it shall be his duty to make a return of such defaulters to the city council, and thereupon executions shall issue against the goods or persons of such defaulter.' So that, in each year, before persons or property could be considered as being in default in order to authorize the issuing of executions against them, these prerequisites had to be complied with, which was not done for ten years, when the city authorities then undertook to comply with said prerequisites, issue the executions, and collect the taxes by levy and sale. The judgment of the court was in these words: 'Whereupon, it is adjudged by the court, that the judgment of the court below, dissolving the injunction, be reversed, and the injunction be reinstated, on the ground: that the tax executions exhibited with the bill were illegally issued, the prerequisites of the ordinance authorizing the issue of tax executions not having been complied with.' In the case of *Bacon* v. *Mayor etc. of Savannah*, 91 *Ga.* 500, the case of *D'Antignac* v. *City Council of Augusta*, supra, is cited in support of the proposition that 'For a municipality to take the property of a citizen under a power conferred by the legislature to tax by local assessment, it must in all matters of substance follow the power strictly.'

"While a municipal corporation is permitted to assess and collect taxes annually to defray the annual expenses of the government, as stated by Judge Jenkins in *D'Antignac* v. *City Council of Augusta*, yet it must be borne in mind that there are many municipalities which are in the condition of Brunswick as stated in the fifth paragraph of plaintiff's petition, wherein it is averred: 'That for a long time past the mayor and council of Brunswick have been more or less in constant need of money, having since 1893 had a large floating debt and also a bonded indebtedness of $300,000, or other large sum, and being a continuous borrower of money up to the full legal limit which they could borrow without an election under the constitutional provisions of the State of Georgia,' so that the necessity for the

collection of back taxes continually exists. And let it be borne in mind that the only mode provided in the charter of the city of Brunswick for the collection of taxes is by the summary, ex parte proceeding of having the clerk of council issue executions, and there is no statute in Georgia affording a common-law remedy for such purpose as in the case of an ordinary debt; and especially would it be true where property is not returned and remains in default that in such cases there would be no person against whom a proceeding at law could be instituted. In Richards v. Com'rs of Clay County, 40 Neb. 45, 42 Am. St. Rep. 650, it was held 'A tax is not a debt capable of enforcement generally by a civil action. If an action is permitted, it is only because the statute expressly provides therefor, or, by failing to provide any method, necessarily implies a right of action. A method prescribed by statute of enforcing and collecting taxes is exclusive; and, if the statute embraces a right of action, the conditions and manner of the action, as specified by the statute, must be strictly observed, or the action will not lie.' In this case the question seems to have been thoroughly well considered, and the opinion of the court is supported by an exhaustive citation of authorities from most of the States of the Union. Judge Cooley, in his work on Taxation, 2d ed. p. 16, states that in general the conclusion reached by the courts has been that when the statute undertakes to provide remedies and those given do not embrace an action at law, a common-law action for the recovery of the taxes as a debt will not lie, and numerous authorities are cited in support of that doctrine. The law is further announced in the same work, p. 435, as follows: 'Sometimes a right to bring suit is expressly given, and where it is, the statute must be closely followed, and any conditions which are named must be observed.' In the American and English Encyclopædia of Law, vol. 25, p. 312, the statement is made: 'Taxes are not debts, and therefore, as a general rule, the common-law action of debt does not lie for their collection where another remedy is given. The right to proceed by action is, however, frequently conferred by statute.'

"The assessment of property in the City of Brunswick for taxes and the fixing of the tax rate thereon for each particular

year fixes a lien thereon, and, in a sense, constitutes a judgment for the taxes and stands in lieu thereof, and on the first day of May all property in default is then subject to be proceeded against by execution, levy and sale. This is the remedy provided by the charter of the city, and, as has already been observed, no other remedy for the collection of taxes therein has been provided by statute. And it should be observed that no time is fixed from and after the first day of May of each year within the limit of which this power can be exercised. Surely it will not be seriously contended that where there is a failure in any one fiscal year to exercise this power to issue executions and levy and sell thereunder for the purpose of collecting back taxes, that not only is the right to do so lost, but, there being no other remedy provided by statute therefor which can be legally pursued, that therefore the city must lose all back taxes due and unpaid for preceding years. And yet that would be the logical result if the contentions of the plaintiff upon this question were upheld. But the court is overwhelmingly convinced and constrained to hold that such is not the law, and that the executions as issued have been legally issued by the clerk of council and levied by the marshal, and that the court is without discretion in the premises, and therefore powerless, under the law, to legally enjoin the defendants from the sale of the Oglethorpe Hotel property for the taxes for which it appears to be in default. The plaintiff, by his own laches, has of course lost the right to appeal from the assessed valuation made of his property and possibly to have the same reduced, but the failure to collect these taxes annually can not properly be claimed to have worked injury and injustice to him, inasmuch as the delay has resulted in an extension of time for the payment of the taxes and without any accruing interest thereon, the city alone, by its laches, being the loser in that respect. Whereupon, it is considered, ordered, and adjudged by the court that the injunction prayed for be denied and refused."

3. One of the points made, with which the learned judge below did not deal, is that if the clerk had the right to issue executions for back taxes, the law existing at the time such taxes

became due should have applied in all particulars, including the time of advertisement, the fact being that the act of 1897 (p. 157), passed after a portion of the taxes here involved had become due, changed the length of time of advertising unreturned property from twelve to four weeks. We believe that this question is controlled by the code of the State and the decisions of this court. While the constitution of this State, art. 1, sec. 3, par. 2, provides that no retroactive law or law impairing the obligation of contracts shall be passed, remedial statutes are held not to be included. In the language of the code: "Laws prescribe only for the future; they can not impair the obligation of contracts, nor generally have a retrospective operation. Laws looking only to the remedy or mode of trial may apply to contracts, rights, and offenses, entered into, or accrued, or committed prior to their passage; but in every case a reasonable time subsequent to the passage of the statute should be allowed for the citizen to enforce his contract, or to protect his right." Pol. Code, § 6. The statute now under consideration did not impair or affect any right of the plaintiff in error, but only changed the remedy provided the defendants in error for the purpose of enforcing their rights. No change was made in anything in which the taxpayer had or could have acquired any right, and the amendment to the city's charter was not in violation of the provisions of the constitution. See, in this connection, *Hall* v. *Carey*, 5 *Ga.* 239; *Searcy* v. *Stubbs*, 12 *Ga.* 437; *Cox* v. *Berry*, 13 *Ga.* 306; *Lockett* v. *Usry*, 28 *Ga.* 345; *George* v. *Gardner*, 49 *Ga.* 441; *Baker* v. *Smith*, 91 *Ga.* 142; *Bacon* v. *Savannah*, 105 *Ga.* 62.

*Judgment affirmed. All the Justices concurring.*