*Robert L. Moye* and *Pottle & Glessner,* for plaintiff.

*M. C. Edwards,* for defendants.

---

STATE OF GEORGIA *v.* WESTERN & ATLANTIC R. CO.

1. The income tax referred to in section 11 of the act to lease the Western and Atlantic Railroad (Acts 1889, p. 362), viz.: "That said lessee or lessees shall be required to pay all taxes and assessments upon the property of this State in the State of Tennessee, and in Georgia upon all property owned or controlled by them, not received from the State, and such further taxes upon their income as is now paid by the Central Railroad and Banking Company," is a tax levied in the exercise of sovereignty, and not a contractual obligation springing primarily from the contract of lease executed pursuant to the act.

2. When the statute undertakes to provide adequate remedies, and those given do not embrace an action at law, a common-law action for the recovery of the tax as a debt will not lie.

(a) The statutes provide adequate remedies for the collection of taxes imposed upon railroad companies.

3. An assessment made in the manner prescribed by the statute is indispensable in proceedings to enforce the collection of taxes.

4. As the petition assigned no specific breach of the lease contract, it is not maintainable as an action for the recovery of damages for breach of contract.

5. Where discovery is merely incidental to the relief prayed, the petition will not be retained for decree where it discloses that the plaintiff is not entitled to the relief in aid of which discovery is prayed.

AUGUST 15, 1911.

Equitable petition.   Before Judge Pendleton.   Fulton superior court.   March 12, 1910.

The State of Georgia owns a railroad known as the Western and Atlantic Railroad, extending from Atlanta, Georgia, to Chatta-

nooga, Tennessee. In November, 1889 (Acts of 1889, p. 362), an act was passed by the General Assembly providing for its lease. It was stipulated that the Governor should advertise for bids, and no bids for less than a stated minimum would be received. Among other features it was provided, in section 7, that all improvements and betterments were to be made at the expense of the lessee, and that all attachments to the realty should be considered permanent, and the road be kept in the condition of first-class roads in Georgia. The Governor was empowered to appoint a board of examiners to ascertain and report the condition of the road. · It was made the duty of the lessee to file with the Governor an annual report of the condition of the road, which report was to set forth the improvements to the physical property, rolling-stock purchased, income from passengers and freight, operating expenses, amount of freight transported and rates charged for the same, and all other facts necessary to furnishing complete information of the condition and operation of the railroad for each year. Section 9 provides for the observance by the lessee of the rules of the railroad commission; and further provides that "said lease company shall have the exemptions, privileges, immunities, rights, and guarantees, and shall be subject to the same laws, liabilities, disabilities, and public burdens on other railroad companies in this State, and no more, in all cases where this act is silent and has made no provisions on the subject." Section 10 is to the effect that the lessees forfeit six months rental, as damages, if in default for the payment of the monthly rental for 20 days; and that if the lessee fails to comply with the lease contract, the Governor, at his option, may declare the lease forfeited and take immediate possession. Section 11 is as follows: "That said lessee or lessees shall be required to pay all taxes and assessments upon the property of this State in the State of Tennessee, and in Georgia upon all property owned or controlled by them, not received from the State, and such further taxes upon their income as is now paid by the Central Railroad and Banking Company, and shall not sublet said road, or any part thereof, to any other company, corporation or party: Provided, The lessees may sublet any property not needed for railroad purposes; provided, that, in the opinion of the attorney-general, that can be done without invalidating the State's title thereto; and all improvements put on said property by the lessees or their tenants shall belong to the

State at the  expiration of said lease." It was further provided that the lessee shall become a body corporate under the name òf the Western and Atlantic Railroad Company during the contin-. uance of the lease; and that if the lessee be a corporation, it shall operate the road as the "Western and Atlantic Railroad Company." On July 16, 1890, a contract of lease· was entered into between the State and the Nashville, Chattanooga and St. Louis Railway Company, in pursuance of the leasing act, wherein the lessee agreed to pay a monthly rental of $35,001 for the leased property for the term of 29 years from December 29, 1890. In June, 1909, the State of Georgia, by its attorney-general and special counsel appointed by the Governor, filed its petition against the lessee, wherein it was alleged that at the time of the lease the equipment of the road was inadequate, which was known to both parties to the contract, and it was in the contemplation of both parties that the lessee would be obliged, for its own interest, to improve the roadbed and structures and add to the movable equipment.  By its contract charter the lessee undertook and agreed to make to the State each year a full statement of all property owned or controlled by it, not received from the State, and to pay to the State thereon a tax equal in rate to the ad valorem taxes paid by other persons and corporations.  From the beginning of the lease the lessee has owned or controlled property and has used and employed the same in the operation of the road, but, in violation of its contract, it has never disclosed to the State either the fact of the existence of such property or the value thereof, and has not paid any sum on this account, except that it has for some four or five years past made partial payments on certain real estate and tracks and other fixtures, which it claims it owned in Georgia and not upon the right of way of said railroad, though the location and identity of said property is not known to the State.  When these facts were discovered by the Governor he requested information in reference thereto; but notwithstanding the express covenant to furnish all information necessary for a full understanding of the condition and operations of the road, the lessee has failed and refused to furnish such information. · Neither the State nor its officers know the value or character and amount of said property, but it charges that it amounts to one and a half million dollars, or other large sum, and has at all t·imes during the lease been that much.  The lessee knows

and has full records touching these matters; and the State has no means of ascertaining the same, except by resort to the equitable powers of the court and a discovery from defendant. Some of the property is used in the conduct of local business, and other property is used in operating through trains over its entire system, treating the Western and Atlantic Railroad as an integral part thereof. The petition then proceeds to set forth what is claimed to be an equitable basis for ascertaining the amount of property subject to an ad valorem tax. The State tax rate for each of the years 1891 to 1908 was alleged, and that certain amounts for each of said years were due as taxes from the defendant to the State because of property used in local traffic, and certain other amounts because of property used in through traffic. It was further alleged that by its charter contract the lessee expressly agreed to make to the State each year a full statement of all its operations and expenditures, and to pay to the State, in addition to its ad valorem taxes, such further tax upon its income as is paid by the Central Railroad and Banking Company, to wit, one half of one per cent. upon its annual net income. The lessee has never complied with this covenant. It has made certain annual statements purporting to so comply, but the same have not been properly made. The petition then proceeds to state what is claimed to be the true rule of calculation for ascertaining the net income, and wherein the lessee had departed therefrom. It was further alleged, that the lessee, in violation of the contract, has made subleases and to parties unknown to the State, and collected from them large sums of money. Some of these subleases were in violation of the contract and some not, but the State has no knowledge and no means of knowledge as to which were and which were not, and how much the lessee derived from them, respectively, and how much was accounted for in the lessee's annual statements. There are many other matters in which the State believes the lessee's accounts have not been kept and rendered according to the contract, but the facts are not so known as to enable the State to allege the same, though they would be so known if the lessee had furnished the reports required by the contract; and many other particulars wherein the lessee has violated the lease contract. As to the things complained of, the facts are peculiarly within the knowledge of the defendant; and though bound by express contract to furnish said knowledge, defendant

has failed and refused to do so, notwithstanding repeated requests for said information and repeated promises to furnish the same. The State has no adequate information nor means of procuring the same, except by resort to the knowledge and conscience of defendant and to records kept by it under its other name and in another State. An interlocutory decree was prayed, requiring the defendant to make a full statement and accounting from the beginning of the lease, in compliance with its contract as set forth in section 7 of the lease act, and all other things necessary to give full information touching the condition and operation of the property; and that the same be decreed to be made as a specific compliance with its contract, and that the State be not bound thereby as by an answer in an equitable suit for discovery. But if the State has mistaken its rights and remedies and is not entitled to such interlocutory decree, and if the court has no adequate power so to order, then the State will and does ask for such other decree as will accomplish the object of furnishing said information; and if no such order can be granted and the court should so hold, then the State will and does ask leave to search the conscience of defendant and its officers and for complete discovery. The petition thereupon propounded 29 interrogatories, covering in great detail all the various matters touched upon in the petition, for all the years from the beginning of the lease. The petition prayed for judgment for ad valorem taxes for $100,000 and interest; for judgment on account of "so-called income tax" of $100,000. Also, "that the court will further inquire, upon equitable principles, into all and singular the breaches of said contract of lease, and if any there shall appear to have been made as hereinbefore alleged, or as may be set up hereafter by amendment or by supplemental action, in the light of the information sought from the defendant by the interrogatories propounded, and shall give judgment thereon in favor of the plaintiff according to whatever may be the true measure of damage that may appear legal and equitable, when the facts sought from the defendant by the aforesaid interrogatories shall have been elicited;" and for general relief. The lessee demurred generally and specially, and the court dismissed the petition on general demurrer.

*John C. Hart,* attorney-general, and *Alexander & Candler,* for plaintiff.

*Tye, Peeples & Jordan* and *Claude Waller,* for defendant.

EVANS, P. J.  (After stating the facts.)  1. The predicate of this action is the 11th section of the leasing act of 1889, which provides, "that said lessee or lessees shall be required to pay all taxes and assessments upon the property of this State in the State of Tennessee, and in Georgia upon all property owned or controlled by them, not received from the State, and such further taxes upon their income as is now paid by the Central Railroad and Banking Company." The ultimate result sought to be attained is the collection of taxes alleged to be due to the State under this section.  In view of the demurrer challenging the right of the State to collect taxes by civil action, it becomes necessary to determine whether the tax referred to in this section is a tax in the strict sense of the word or simply a contractual obligation.  In approaching a solution of this question, it should be kept constantly in mind that the lessee's rights and obligations are not primarily founded in the contract of lease, but in the act of the legislature authorizing it.  That act defined the terms upon which the State road was to be leased, and the contract was executed agreeably to it.  The State declared in the legislative enactment its policy with regard to the public burdens to be imposed on the lessee, and the contract of lease executed pursuant to the act was a guaranty that no greater public burdens would be exacted.  *W. & A. R. R. Co.* v. *State,* 54 *Ga.* 429. It becomes then a question of legislative intention as to the nature of the taxes mentioned in section 11.  In this section the legislature was dealing with public burdens.  It had already been provided, in another section of the act, that the lessee was to pay a monthly rental, the minimum of which was fixed.  It was therefore important for the State, in order to receive the greatest possible benefit from competitive bidding, to declare what public burdens would be exacted of the lessee.  If the State clearly defined these burdens and limited itself to exact no more, this element of certainty respecting the burdens of sovereignty which the lessee was to bear tended to increase the rental value.  In proportion as the burdens were more onerous, it is reasonable to infer that the rental price would be depressed.  The matter of rent and the matter of taxes were treated in the act as standing on distinct and different footings; they were dealt with in separate sections.  The money which the State receives as monthly rental is the State's income derived from the ownership of the leased property; the money

which the State receives in the public coffers in the exercise of sovereignty, is the taxpayer's tribute to that sovereignty. The requirement to pay the ad valorem tax on property not received from the State, but used in the operation of the road, referred to a tax in its strict sense. Is there any difference in the quality of the income tax required of the lessee in the same sentence of the section? One of the arguments advanced to support the theory that the requirement of a percentum of the lessee's annual income is not the exaction of a tax is that it was beyond the constitutional power of the legislature to levy an income tax. The constitution of this State provides that "all taxation shall be uniform upon the same class of subjects, and ad valorem on all property subject to be taxed within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." Civil Code (1910), § 6553. It is our opinion that this provision has no reference to the levying of a tax upon public property. The ordinary meaning of taxation is a charge levied by the sovereign power upon the property of its citizen; it is not a charge upon its own property. People v. McGreery, 34 Cal. 432, 456. The general rule is that public property is not subject to taxation. "This immunity rests upon the most fundamental principles of government; being necessary, that the functions of government be not unduly impeded, and that the government be not forced into the inconsistency of taxing itself in order to raise money to pay over to itself." Penick v. Foster, 129 Ga. 217 (58 S. E. 773, 12 L. R. A. (N. S.) 1159) ; Georgia Fire Ins. Co. v. Cedartown, 134 Ga. 87 (67 S. E. 410). The quoted provision of the constitution relates to the collection of taxes from property other than public, and has no application to the impressment of a tax upon the public property of the State. The case presented is not that of a perpetual leaseholder, where the tenant is the virtual owner of the property, entitled to its use forever and subject to pay taxes thereon as owner, as was the case in Wells v. Savannah, 87 Ga. 397 (13 S. E. 442). In making the lease the State reserved the right of forfeiture on broken conditions subsequent, and imposed terms and conditions indicating that no estate was intended to be conveyed to the lessee, but that the lessee was to have only a usufructuary interest during the lease period. The power of the legislature to impose taxes is inherent, and is only circumscribed by the organic law. When the

40

legislature authorized the contract which permitted the lessee to have possession of the State's property for a term of years, it was within the constitutional sphere of legislative action either to expressly preserve the status of public property with reference to immunity from taxation, or to stipulate that the lessee should pay a specific tax. The latter course was adopted, and a specific tax, to wit, a tax upon the lessee's income (such as was paid by the Central Railroad and Banking Company), was levied.

2. Having reached the conclusion that the covenant in the lease contract, binding the lessee to pay such taxes upon the lessee's income as was paid by the Central Railroad and Banking Company at the time of the lease, is a covenant between the State and the lessee, fixing and limiting the character and amount of the tax to be exacted by the State as a sovereign, in contradistinction to an obligation in the nature of a debt springing from and supported by the contract, we will next consider the right of the State to enforce collection of it, and also of the ad valorem tax alleged to be in default, in a civil action. There are two lines of authority on this proposition. Some courts hold that taxes are in the nature of a debt due by the citizen to the State, enforceable by an action of assumpsit; and that the common-law right of the State to collect a tax by a civil action is not surrendered by the legislature in furnishing specific remedies, unless expressly so stated in the statute. On the other hand, the weight of authority is to the point that when the statute undertakes to provide remedies, and those given do not embrace an action at law, a common-law action for the recovery of the tax as a debt will not lie. 1 Cooley on Taxation, 17; Burroughs on Taxation, 254. It was a rule at common-law that where a statute creates a right and provides a particular remedy for its enforcement, the remedy is generally exclusive of all common-law remedies. When this rule is considered in connection with the genius and spirit of our American institutions, its application to the collection of taxes, where adequate statutory remedy is provided, can not be doubted. A most distinctive feature of the constitution of the United States and of this State is the division of the powers of government into three separate departments,—executive, legislative, and judicial. It was designed and intended that one department should not usurp the ordinary functions of the others, but that all three should act in harmonious relation. So,

when the legislature authorizes a tax for governmental purposes and provides an adequate remedy for its collection by administrative officers, the necessary intendment is that the collection of the tax is exclusively confided to that administrative department of the government. And it has been held by this court that when the statute undertakes to provide remedies for the collection of taxes, and those given do not embrace an action at law, a common-law action for the recovery of taxes as a debt will not lie. *DuBignon* v. *Brunswick*, 106 *Ga.* 317 (32 S. E. 102) ; *State* v. *S. W. R.*, 70 *Ga.* 33.

However it is contended that the petition presents equitable features, and that in equity an action may be maintained by the State to collect its revenue. It would be idle to enter into a discussion of possible differentation between an action in which the equitable powers of the court are invoked and one only seeking purely legal relief. Whatever equitable relief is asked in the petition is predicated upon the erroneous construction of the lease act that the provision for the payment of taxes upon the income of the leased property is a debt arising from the contract executed pursuant to the act, and not a tax.

The General Assembly has enacted an elaborate scheme for the assessment of the property of railroad companies and the collection of any tax lawfully levied. Provision is also made for the collection of back taxes from delinquent or defaulting railroad companies; and whatever infirmity may have been in the original statute with reference to assessment without opportunity of the delinquent taxpayer to be heard, as pointed out by the Supreme Court of the United States in Central of Georgia Railway *v.* Wright, 207 U. S. 127 (28 Sup. Ct. 47, 52 L. ed. 134), has been relieved and cured by the amendment of 1908 (Acts 1908, p. 25). The amendment relates to the remedy and does not impair any right of the taxpayer. It only supplied a defect in the existing law. The law as amended is applicable to the collection of back taxes without regard to the time of their accrual, if within the statute of limitations. *DuBignon* v. *Brunswick*, supra.

3. Another insuperable objection to this effort to collect a tax by civil action in the nature of an action of debt is that there has been no assessment. An assessment is indispensable in proceedings to enforce the collection of taxes. Until an assessmnt of a

per centum tax is made, the amount of the tax is not fixed. Tax proceedings are in invitum, and to be valid the statute must be followed, and no tax on property can be collected until it has been assessed. *Hawkins* v. *Jonesboro,* 63 *Ga.* 527. Should the legislature pass a tax law which inadvertently omits the mention of a return, but requires payment of the tax to be made to a particular officer, it means by necessary implication that the return is to be made to the officer who makes the assessment of the tax. *Smith* v. *Goldsmith,* 63 *Ga.* 736. But, as already indicated, the legislature of this State has provided for an assessment by a particular officer; and the rule is well grounded and followed in this State that where the statute provides for an assessment by a ministerial officer, the assessment must be made by him and not by the courts. *Bohler* v. *Verdery,* 92 *Ga.* 719 (19 S. E. 36) ; *Norris* v. *Coley,* 100 *Ga.* 553 (28 S. E. 222).

4. The petition contains a very general allegation suggestive that a recovery of damages for breach of contract is sought. There is, however, no distinct allegation of any breach of the contract. It is alleged that the lessee had "made divers contracts of sublease unknown to the State, and that the lessee has collected from said sublessees from time to time large sums of money. Some of these subleases it is believed and charged were in violation of the contract, and some were not; but the State has no knowledge or means of knowledge as to which of said subleases were in violation of the contract and which were not, and how much it derived from the respective contracts, nor how much thereof was accounted for in the annual statements touching the income tax." It is a fundamental rule of pleading that in order for a plaintiff to recover damages for a breach of contract, the specific breach must be alleged, and the general allegation that the lessee had perhaps breached the contract by making unauthorized subleases is too vague to support the petition as one claiming damages for breach of contract.

5. As the suit is not maintainable for the collection of taxes, it can not be retained as one for the discovery of the property claimed to be subject to taxation. Furthermore, as the petition contains no sufficient averments of a breach of contract to support a decree for damages, it can not be maintained for the discovery of possible breaches. These conclusions result from the well-settled

rule that where discovery is merely incidental to the relief prayed, the suit can not be maintained when the plaintiff is not entitled to the relief prayed.   Everson v. Equitable Life Insurance Co., 68 Fed. 258; Hurricane Telephone Co. v. Mohler, 51 W. Va. 1 (41 S. E. 421).

Judgment affirmed.   Beck, J., absent.   The other Justices concur.