DECATUR COUNTY BUILDING AND LOAN ASSOCIA-
TION *v.* THIGPEN *et al.*

No. 8014.    SEPTEMBER 17, 1931.

364

*R. G. Hartsfield,* for plaintiff.   *J. E. Drake,* for defendants.

ATKINSON, J.   1.   "Liens for taxes due the State or any county thereof, or municipal corporation therein, shall cover the property of taxpayers liable to tax, from the time fixed by law for valuation of the same in each year until such taxes are paid. . . Such liens for taxes are hereby declared superior to all other liens." Civil Code (1910), § 3333.   "Taxes shall be paid before any other debt, lien, or claim whatsoever, and the property returned or held at the time of giving in, or after, is always subject." Civil Code (1910), § 1140; *Verdery* v. *Dotterer,* 69 *Ga.* 194 (2).   This applies to all property returned or held by a taxpayer that is subject to taxation under the constitution of this State. *Phœnix Mutual Life Ins. Co.* v. *Appling County,* 164 *Ga.* 861 (139 S. E. 674).

2.   It has been held by this court: "The lien for State and county taxes attaches to property at the time fixed by law for the valuation of the same in each year. . . Taxes due the State are not only against the owner but against the property also, regardless of judgments, mortgages, sales, transfers, or incumbrances of any kind." *Bibb National Bank* v. *Colson,* 162 *Ga.* 471 (3) (134 S. E. 85).   See also *Verdery* v. *Dotterer,* supra; *Winn* v. *Bulls,* 127 *Ga.* 385 (3) (56 S. E. 406), applying the principle to unreturned property; *Stokes* v. *State,* 46 *Ga.* 412 (12 Am. R. 588); *Wilson* v. *Boyd,* 84 *Ga.* 34 (10 S. E. 499); *Planters Warehouse Co.* v. *Simpson,* 164 *Ga.* 190 (138 S. E. 55).

3. The public may treat property as belonging either to the maker or the holder of a bond for title, when the latter is in possession; yet, as between the parties, the one receiving the rents or enjoying the use is liable for the tax. Civil Code, § 1018. And it has been held in effect that where an owner of property conveys legal title thereto as security for a debt, retention of the equitable interest is such substantial beneficial ownership as will render him liable for the taxes thereon. *Central of Georgia Railway Co.* v. *Wright,* 124 *Ga.* 630 (53 S. E. 207). See also *Penick* v. *Atkinson,* 139 *Ga.* 649-656 (77 S. E. 1055, 46 L. R. A. (N. S.) 284, Ann. Cas. 1914B, 842).

4. The Civil Code, § 6029, declares: "Where property is subject to a lien and part of it is sold by the debtor, the part remaining in him should be first applied to the payment of the lien. If the property subject to such lien is sold in several parcels at different times, the parcels should be charged in the inverse order of their alienation." This has been held to be a rule of contribution among purchasers, and does not affect the right of a creditor to levy upon any of the parcels subject to the execution. *Hollinshed* v. *Woodard,* 124 *Ga.* 721 (52 S. E. 815). Much less would it affect the right of the State and county to levy upon any of the parcels for taxes. This does not conflict with the decisions of this court in *Merchants National Bank of Rome* v. *McWilliams,* 107 *Ga.* 532 (33 S. E. 860), *Columbia Trust & Realty Co.* v. *Alston,* 163 *Ga.* 83 (135 S. E. 431), *Herrington* v. *Parham,* 166 *Ga.* 204 (142 S. E. 858), *Douglas* v. *Hannahatchee Ranch Corporation,* 168 *Ga.* 238 (147 S. E. 518), and similar cases where the contest was between purchasers from a common grantor and transferees of tax executions against the common grantor and did not involve the right of a creditor of such common grantor.

5. Under application of the foregoing principles, if an owner of land conveys it by warranty deed as security for debt, and in the succeeding year fails to return the land at the time he returns his other property for State and county taxation for that year, and after default in payment execution is issued against him for State and county taxes on the basis of his return of other property, the lien for such taxes will attach not only to the property included in the return but also to the land which he has conveyed as security for debt.

6. If the land conveyed by the security deed is levied upon by the sheriff and sold and conveyed under and by virtue of the tax execution as the property of the defendant, the deed to the purchaser will convey the property subject to be redeemed under the provisions of the Civil Code, §§ 1169-1173, 1179. A different ruling is not required by *Norris* v. *Coley,* 100 *Ga.* 547 (28 S. E. 222), or *Cook* v. *Turner,* 167 *Ga.* 671 (146 S. E. 314), holding in effect that a tax execution must be based on a return of the property or, if unreturned, on an assessment of its value by the tax-receiver. In this case the execution is against the defendant personally for taxes on property that was duly returned.

7. Equity will not decree the sale for taxes to be void, in a suit by the holder of the security deed, on the grounds (a) that the property was not subject to the tax; (b) that a prior levy of the execution on other property had not been dismissed and the advertised sale thereunder not accounted for; (c) that other property of the defendant had been sold for taxes for the year next preceding the year of the taxes in question; (d) that the conveyance to petitioner was the first conveyance of several parts of the same property, and the lien should be discharged by the several properties in the inverse order of the dates of the sales.

8. Under application of the foregoing principles, there was no error in sustaining the demurrer and dismissing the action.

*Judgment affirmed. All the Justices concur, except*

HINES, J., dissenting. On May 18, 1927, Godwin conveyed to Decatur County Building & Loan Association a vacant lot to secure a debt which he owed the grantee. On September 30, 1928, he conveyed by deed to Yates a lot on which were located two houses. In 1928 he returned for taxation three houses and lots, which included the two houses conveyed to Yates and the house in which he himself lived. He became a tax defaulter, and executions were issued against him for his 1928 State, county, and school taxes, which executions the sheriff, on June 1, 1929, levied on the two houses and lots previously conveyed to Yates, and advertised the same for sale on the first Tuesday in July, 1929. The sheriff did not sell the property so levied on and advertised for sale, because Yates requested him not to sell it, and at the same time pointed out for levy and sale the vacant lot which Godwin had previously conveyed as security to said association. The sheriff did not dis-

miss the levy on the Yates property, but made another levy on the vacant lot so sold to the association and advertised and sold the same on the first Tuesday in October, 1929, at which time H. H. Thigpen and H. J. Rhames were the highest bidders; and the sheriff made them a tax deed which with the tax fi. fas. was duly recorded. The vacant lot conveyed by Godwin to the association was not returned by Godwin for taxation for the year 1928, nor was it assessed to him on the tax-digest of the county. At the date of the levy on the Yates property it was subject to the lien, and had it been sold by the sheriff it would have brought a sufficient sum to pay the taxes. The association filed its equitable petition against Thigpen and Yates, in which it stated the foregoing facts and made the following allegations: Godwin was the common grantor of petitioner and Yates. The conveyance to Yates was subsequent to that to petitioner. Consequently Yates' property was primarily liable for the taxes claimed. Godwin is insolvent. Under the facts the tax deed to the defendants is void and a cloud upon petitioner's title, because (a) the vacant lot was not subject to the tax lien; (b) the first levy of the sheriff not having been accounted for by a sale as advertised, or dismissed, the second levy and sale thereunder was void; (c) the residence of Godwin had been sold by the sheriff for his 1927 taxes, and title thereto had passed; and (d) on equitable principles the last property sold by a common grantor should bear the burden of the entire tax. This suit was filed before the period of redemption for tax sales had expired. Petitioner prayed for a restraining order to prevent a change in the status of the property, that the first levy of the tax executions be ordered to proceed against Yates' property, that the tax deed to the defendant be canceled; and for other relief. The court sustained the defendant's demurrers and dismissed the petition. The majority opinion affirms that judgment. To this judgment and conclusion I can not agree.

The demurrers admit the truth of the facts above set out. Under these facts was the lot of the plaintiff, which had not been returned by Godwin or assessed for taxation, subject to levy and sale under the tax executions issued against Godwin for other property returned by him and assessed for taxation in 1928? The broader question is whether property of a taxpayer which has never been returned by him, or assessed for taxation, can be levied

on for taxes due on other property duly returned by him and assessed for taxation. I fully agree with the majority that liens for taxes due the State, or any county thereof, or any municipality therein, cover all the property of taxpayers liable to taxation within the State, or any political subdivision thereof, from the time fixed by law for the accrual thereof in each year, and to the principle that the payment of such taxes is to be made prior to any other debt, lien, or claim whatsoever. I further agree to the proposition that the property of a taxpayer returned by him for taxation, or held by him at the time of giving in or afterwards, is always subject to such lien. I further agree to the propositions laid down by the majority in the second and third divisions of the opinion. In the view which I take of this case it is unnecessary to pass upon the principles announced in the fourth division. However, I feel constrained to dissent from the propositions laid down in the fifth, sixth, and seventh divisions. The vital question is, what is the proper method of enforcing liens on unreturned property for taxes. The fundamental principle upon which I base this dissent is that no property of a taxpayer can be sold for taxes unless there has been an assessment thereof fixing the amount of taxes due thereon. The assessment is the judgment upon which alone the tax execution can issue. If there is no assessment of a particular piece of property for taxation, there can be no execution issued for the collection of such taxes. From this principle it follows that tax executions issued against property returned by the taxpayer for taxation can not be levied upon other property neither returned by him for taxation nor, in the absence of such return, assessed for taxation by the proper officer.

All lands in this State subject to taxation, whether improved or unimproved, shall be returned by the person or persons owning the same, his, her, or their agent or attorney, to the receiver of the county where the land lies. It shall be the duty of the receiver to require all persons making returns of lands in his county to return the same by district, number, and section; if the lands have such designation, and when lands have no such designation, then by such description as will enable receivers to identfy them. Receivers are prohibited from receiving any returns of lands which do not so designate them. Civil Code (1910), § 1068. The form of tax returns is prescribed by law for the purpose of having a full and

correct return of the real and personal property of the taxpayer. This form requires the taxpayer to set out how many acres of land he owns, or how many he holds as parent, husband, trustee, executor, administrator, or attorney, the location by number and section, and the value thereof. It likewise requires him to set out how many acres of wild land he owns, or represents, by number, district, and section, and the value thereof. It likewise requires him to give the value of his improved city or town property, including improvements thereon, and the value of his unimproved city or town property. Civil Code (1910), § 1087. In construing sections 1068 and 1087 together, the taxpayer in returning his landed property for taxation must return the same by district, number, and section, if the lands have such designation; and if they have no such designation, then by such description as will enable receivers to identify them. When the taxpayer makes his return, the receiver is required to scrutinize the same carefully; and if, in his judgment, he finds the property embraced therein, or any portion thereof, returned below its value, he shall assess the value at once or within 30 days. Civil Code (1910), § 1097. If the receiver is satisfied with the valuation placed upon the land by the taxpayer, he receives the return and assesses the land for the taxes due thereon. After the receiver has received the returns of taxpayers, it is his duty, within 10 days after he has closed his books for returns of taxes, to present the tax-returns of the county for the current year to the county board of tax-assessors. It is then made the duty of the tax-assessors to inspect the tax-returns so laid before them by the tax-receiver; and if, in the opinion of the board, any taxpayer has omitted from his return any property that should be returned, or has failed to return any of his property at a just and fair valuation, the board shall correct such return, and shall assess and fix the just and fair valuation to be placed on said property. It is made the duty of the board to see that all taxable property within the county is returned and assessed at its just and fair valuation. Acts 1913, p. 123; Acts 1918, p. 230; 1 Park's Code, §§ 1116(m), 1116(n); 8 Park's Code Supp. 1922, § 1139(a). So it is the duty of the tax-receiver in the first instance to see that the taxpayer returns his property at its just and fair valuation. If this officer is of the opinion that the valuation placed by the taxpayer upon his property is just and fair, it is his

duty to receive the return; but it is his duty, within ten days after he has closed his books for the return of property for taxation, to present the tax-returns to the board of tax-assessors, whose duty it is to inspect the same, and, if they find that a taxpayer has returned his property below its just and fair valuation, to correct such return, and assess and fix the just and fair valuation to be placed thereon. Thus the fixing of the just and fair valuation of the property returned for taxation is an essential element of its due assessment for taxation.

. If a person fails to make a return in whole or in part, or fails to fix a value to his property, it is the duty of the receiver to make the valuation, and assess the tax thereon, and in other respects to make the return for the defaulting taxpayer from the best information he can obtain; and having done so, he shall double the tax in the last column of the digest against such defaulting taxpayer, after having placed the proper market value in the proper column. Civil Code (1910), § 1105. In the absence of a return by the taxpayer of his property for taxation, or any part thereof for that purpose, the receiver, under this section, must make the valuation thereof and assess the taxes due thereon, and make the return for the defaulting taxpayer, and double-tax the same. In case of property unreturned for taxation this method must be followed; and it is an indispensable element in the assessment thereof for the purpose of enforcing the lien of the State. Doing this is the chief element in the assessment of property for taxation. So, until property is returned or properly assessed for taxation, the liens of the State and its subordinate divisions for taxes can not be enforced. There is no provision of law by which executions can be issued for taxes due on unreturned property until the same is assessed in some of the methods pointed out by law. Our statutes require that each separate and distinct parcel of land shall be separately valued and assessed, and this is imperative. This statutory requirement is now almost universal. 37 Cyc. 1000. Statutes requiring real property to be listed and assessed in the name of the owner are mandatory. The assessment must be made in the name of the owner when he is known, or by the exercise of ordinary care the owner be discovered. Unless the assessment is so made it will not support any proceedings for the enforcement of the tax. 37 Cyc. 1002, note 90, and cit. The assessment of a joint tax on

two parcels of the same owner is invalid. 37 Cyc. 1001, note 81, and cit. So where a tax execution was issued in rem and the land was sold thereunder, where the owner was known to the tax-receiver and the tax could have been assessed against the owner, the tax sale was held to be void. *Norris* v. *Coley,* 100 *Ga.* 547 (supra). In that case this court quoted the principle laid down by Judge Cooley, that in cases of tax sales a fundamental condition to their validity is that there should have been a substantial compliance with the law in all proceedings of which the sale was a culmination. In *Cook* v. *Turner,* 167 *Ga.* 671 (supra), this court held that under the Civil Code of 1910, § 1070, a tax-collector can not issue an execution for taxes against wild lands not given in for taxes by the owner in the county in which they are located, in the absence of an assessment of said land for taxes in some of the modes provided by law; and that a sale of such land under a tax execution not based on such assessment is void, and the purchaser at such sale acquires no title. While the land involved in that case was wild land, the principle announced is equally applicable to improved lands of the taxpayer. The court made this ruling: "An assessment of a tax is a final listing of persons and property subject to the tax, with an official estimate of the value of the property of each for the purpose of the tax. It is a final step in the process of 'taxation,' and the one which fixes a definite and enforceable liability upon persons and property for the amount of the tax." We further held: "Without an assessment execution can not issue and no tax can be collected. 'The assessment is an indispensable prerequisite to the validity of a tax against any individual; for without a valid assessment there can be no lawful attempt to collect the tax or to enforce it against any specific property.'" That decision was by a full bench.

The ruling of the majority is put upon the third division of the opinion in *Winn* v. *Butts,* 127 *Ga.* 385 (3) (56 S. E. 406). That decision was not by a full bench. It was based entirely on section 883 of the Political Code of 1895, which is now contained in section 1140 of the Civil Code of 1910, and which declares that "Taxes shall be paid before any other debt, lien, or claim whatsoever, and the property returned or held at the time of giving in, or after, is always subject." This section merely fixes the priority of the liens of the State and its political subdivisions for taxes. It does

not undertake to furnish the machinery by which these liens can be enforced. In *Stokes* v. *State*, 46 *Ga.* 412 (supra), the execution was issued by the tax-collector under the provisions of law now found in section 1127 of the Civil Code of 1910, and was based upon the assessment therein provided.

In view of the principles announced in the authorities cited above, I am unable to agree to the opinion of the majority.